**James D. HODGSON, Secretary of Labor, United States Department of Labor (Substituted as Plaintiff for George P. Shultz, Resigned), Plaintiff,**

v.

**ROYAL CROWN BOTTLING COMPANY, Inc., and Ralph L. Webb, Individually, Defendants.**

**No. EC 69-29-S.**

United States District Court,
N. D. Mississippi, E. D.

Dec. 29, 1970.

Beverley R. Worrell, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

W. J. Threadgill of Threadgill & Smith, Columbus, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action came on for trial on June 2, 1970, before the court sitting without

a jury. The court has heard the evidence, reviewed the documents received in evidence at the trial, considered arguments and briefs of counsel and is now fully advised in the premises.

The subject action was brought by plaintiff, Secretary of Labor (hereinafter referred to as the Secretary), to enjoin defendant, Royal Crown Bottling Company, Inc. (hereinafter referred to as Royal Crown), and Ralph W. Webb, individually, from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C.A. § 201, et seq. (hereinafter referred to as the Act)), and to restrain defendants from withholding payment of minimum wages and overtime compensation due their employees under the Act.

Royal Crown is a Mississippi corporation organized in 1964. Prior to the incorporation of Royal Crown, its organizers and stockholders operated the business as a partnership. The partnership and its successor Royal Crown have been and are engaged in the production and distribution of soft drinks.

Royal Crown has two plants. One plant is located at Columbus, Mississippi. There are four soft drink routes operated out of this plant. Three of the routes are entirely within the State of Mississippi. The fourth route extends across the state line into the State of Alabama. The Alabama route produces a substantial part of the gross revenue of the Columbus plant. Before reaching the state line the Alabama route services a few customers located in Mississippi. The Mississippi customers generate only a small percentage of the gross revenue on the Alabama route.

Royal Crown's other plant is situated at Tupelo, Mississippi. All routes originating at the Tupelo plant serve only Mississippi customers, although two of the routes cross the state line in doing so.

Prior to October 25, 1968, Royal Crown operated a separate bottling plant and distribution center at each location. Since that date there have been no bottling operations at the Columbus plant and the Tupelo plant has bottled the drinks which have been sold through both the Tupelo and Columbus distribution centers.

During the period of time pertinent to this action when Royal Crown operated a bottling plant at both locations, Columbus acquired sugar from points outside the state, and Tupelo acquired new bottles and cases from outside the state. The sugar, bottles and cases were utilized by both plants in the bottling of drinks, transfers being made between the plants as the goods were needed.

During the pertinent period, the sales and distribution routes of each plant were in charge of driver-salesmen, who employed helpers to assist in the work. The helpers, in addition to other duties hereinafter mentioned, picked up used bottles and cases on the routes served by them and these were returned to the plant. In its bottling operation these used bottles and cases were used in the bottling of drinks. The bottles and cases were utilized without discrimination, and became a part of the drinks sold in the State of Alabama.

The Secretary of Labor, approximately ten years ago, brought an action similar to the one involved in the action sub judice against the partnership.[1] The case was decided adversely to the Secretary, and his appeal to the Fifth Circuit was later dismissed by him.[2] District Judge Clayton's written opinion dealt with the sole question of whether the helpers on the Alabama route out of the Columbus plant were employees of the driver-salesman, or Royal Crown. The oral opinion rendered from the bench dealt with the other issues involved in the case. Defendants contend that the final judgment rendered by this court in that action constitutes res judicata and

1. Goldberg v. Webb, N.D.Mississippi, 1961, 192 F.Supp. 654.

2. Goldberg v. Webb, No. 19245, C.A. 5.

bars the prosecution of the case sub judice.

The court will subsequently adopt detailed findings of fact and conclusions of law which will dispose of all issues in the action. At this point, however, the court will discuss principles of law applicable to the facts found to exist in the case.

One paramount issue is whether the employees of defendants at their Tupelo plant were covered by the Act. Defendants received new bottles, cases, and other goods (hereinafter referred to as goods) from other states. These goods were delivered to defendants' plant by motor carriers, unloaded from the carriers' vehicles and placed on the unloading dock, or on the floor near the door of the warehouse. There is some evidence that employees of defendants, other than those designated or authorized to do so, assisted in moving the goods from the vehicle to the plant's unloading dock. There is a factual dispute on this issue, but defendants concede that employees assisting in removing the goods from the vehicles to the unloading dock are covered under the Act. The parties differ, however, on the legal issue of whether employees who move or assist in moving the goods from the place of unloading to the warehouse space are covered under the Act. Defendants contend that the interstate journey of the goods ended when the goods came to rest on the unloading dock. Plaintiff contends that the interstate journey continued until the goods came to rest in the storage area, and, as to new bottles and cases purchased for the use of the Columbus plant, the journey continued until the goods were placed in the Columbus warehouse.

■ The parties have submitted numerous authorities on the point. The court is persuaded that the plaintiffs' contention is the correct interpretation of the law, and is supported by the greater weight of authorities. Walling v. Jacksonville Paper Co., 317 U.S. 564,

63 S.Ct. 332, 335, 87 L.Ed. 460, 466, where the court said:

" * * * No ritual of placing goods in a warehouse can be allowed to defeat that purpose. The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act. * * *"

See Mitchell v. Royal Baking Co., 219 F.2d 532 (5 Cir. 1955); Mitchell v. Sunshine Dept. Stores, Inc., 292 F.2d 645 (5 Cir. 1961); Nunn's Battery & Electric Co. v. Goldberg, 298 F.2d 516 (5 Cir. 1962); Wirtz v. Standard Container and Paper Co., 389 F.2d 134 (5 Cir. 1967); Sucrs. De A. Mayol & Co. v. Mitchell, 280 F.2d 477 (1 Cir. 1960); Shoemake v. Gainesville Nehi Bottling Co., Inc., 55 CCH Lab.Cas. Section 31,898, (N.D.Ga. 1967); Stewart-Jordan Distributing Co. v. Tobin, 210 F.2d 427 (5 Cir. 1954); Mitchell v. C & P Shoe Corp., 286 F.2d 109 (5 Cir. 1960).

Thus, all employees of defendants were covered employees who assisted in unloading goods received from an out-of-state source and moving such goods to the storage area to be comingled with the stock on hand. In the case of goods received at one plant to be used at the other the interstate journey continued until the goods came to rest in the warehouse of the plant to which they were removed.

■ The helpers at the Tupelo plant assist the driver-salesmen on the routes operating therefrom. All sales are made in the State of Mississippi. These helpers pick up used bottles and cases and return them to the plant where they are used again in the bottling operation. A portion of the used bottles and cases are incorporated into the finished product which is later sold on the Alabama route out of the Columbus plant. The helpers on the Tupelo routes are, therefore, engaged in the production of goods for

commerce and covered under the Minimum Wage Provision of the Act. See Wirtz v. Pepsi Cola Bottling Company of Augusta, 342 F.2d 820 (5 Cir. 1965).

■ Another paramount issue is whether the helpers for the driver-salesmen are employees of defendants. Defendants contend, especially with reference to helpers on the Alabama route, that the helpers are not their employees, but employees of the driver-salesmen. Defendants rely principally on Judge Clayton's opinion in the former suit, Goldberg v. Webb, supra, and a Fifth Circuit decision, Wirtz v. Dr. Pepper Bottling Company of Atlanta, 374 F.2d 5 (5 Cir. 1967). Judge Clayton held in Goldberg v. Webb that the helper on the Alabama route was an employee of the driver-salesman, because " * * * [S]uch helper is 1) not hired by defendants, 2) not fired by defendants, 3) not controlled by defendants, 4) not required by defendants, and 5) not paid by defendants". Judge Clayton also found that the helper assisted in loading filled drink bottles on the trucks and unloading empties on the return. The fair inference from the proven facts in the case sub judice is that the defendants add to the guaranteed minimum weekly wage of the driver-salesman a sufficient amount to take care of the weekly wage of the helper. The helper returns to the plant on Saturday morning to wash and clean the truck, and on occasions while there carries cases of drinks from the warehouse to vehicles of customers who have come to the plant for supplies of soft drinks. The defendants' bookkeeper computes the helper's wages and furnishes a pay envelope for the helper to be delivered to him by the driver-salesman. The driver-salesman does not keep any books, has no federal employer's identification number and makes no federal or state tax return, except income tax returns. The court is persuaded that there is a different factual situation existing in the case sub judice than that which existed in the former litigation. The court finds that the holding of the court in the previous case does not control the decision in this case.

The facts in Wirtz v. Dr. Pepper Bottling Co. of Atlanta, supra, distinguish it from the case sub judice. In that case the helpers did not go upon the premises of the defendant. They were picked up after the driver-salesman left his employer's premises, and were dropped off before he returned. The facts are entirely different in the case sub judice.

■ The court believes the facts developed in the trial of the case, sub judice, sustain the contention of plaintiff that the helpers on the Alabama route were in fact the employees of the defendants and that the helpers' work was performed for the benefit of defendants. Surely, as an economic fact the helpers were working for and dependent upon defendants' business as their means of livelihood. See Stewart-Jordan Distributing Co. v. Tobin, supra.

Defendants plead the former litigation as a bar to the action sub judice. The court does not believe that such a defense has merit. The former action was concluded more than seven years before the action sub judice was started. The defendants in the former action were the partners engaged in the operation of Royal Crown. In the action sub judice the defendants are the corporation and its managing head. The cause of action is not entirely the same in both cases. The subject matter of the action sub judice is different from that in the former action. The issues in the former action were limited to the receipt of goods coverage at Tupelo and the employment relationship of the Alabama helper. Black's Law Dictionary, Fourth Edition, at page 1470, provides that res judicata to be applicable " * * *

[R]equires identity in the thing sued for as well as identity of cause of action, of persons and parties to action, and of quality in persons for or against whom claim is made. * * *" As authority for the statement Black cites Freuden-

reich v. Mayor and Council of Borough of Fairview, 114 N.J.L. 290, 176 A. 162, 163. See Credit Service, Inc. v. Fleming, 372 F.2d 143 (5 Cir. 1967). The former litigation fails to reach that standard.

■ The individual defendant, Ralph L. Webb, owned fifty percent of the issued and outstanding stock of Royal Crown. He was and is the president and chief executive officer of the corporation, and, as such, was and is in complete control of the operation of the business of the corporation. All other employees of the corporation are under his control and supervision and are hired and fired by him. Plaintiff contends during the period since February 4, 1966, defendant Webb has acted directly and indirectly in the interest of Royal Crown in relation to its employees. The evidence in the case sustains this contention. Section 3(d) of the Act[3] provides:

"'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization."

The court is of the opinion that defendant Webb is an "employer" within the meaning of the Act, and is, therefore, a proper party defendant in this action. Shultz v. Chalk-Fitzgerald Construction Co., 309 F.Supp. 1255 (D.Mass.1970).

■ The parties seem to agree that the driver-salesmen and their helpers, as well as others whose work relates directly to the safe operation of the trucks used on the routes of defendants, are exempt from the overtime provision of the Act because the Interstate Commerce Commission has power to establish qualifications and maximum hour of service for their work.[4] The court is in accord.

■ Plaintiff seeks the injunctive processes of the court to permanently enjoin defendants from violating the provisions of Section 15(a) (2) and 15(a) (5) of the Act, and to enjoin and restrain them from withholding payment of minimum wages and overtime compensation found to be due employees of defendants under the Act, with interest. The Fifth Circuit has held in numerous cases that the injunction is a necessary tool in order to effectuate the policy of Congress and aid the administrative effort at enforcement of this policy and should be utilized when the record reflects prior violations of the Act over a long period of time, despite efforts of the Secretary to prevent such violations. The court is of the opinion that the case sub judice is one that requires the court to grant injunctive relief. See Wirtz v. Atlas Roofing Manufacturing Co., 377 F.2d 112 (5 Cir. 1967); Goldberg v. Cockrell, 303 F.2d 811 (5 Cir. 1962); Shultz v. Parke, 413 F.2d 1364 (5 Cir. 1969); Shultz v. Mack Farland & Sons Roofing Co., 413 F.2d 1296 (5 Cir. 1969); Mitchell v. Pidcock, 299 F.2d 281 (5 Cir. 1962).

The findings of fact and conclusions of law by the court which follow require the court to grant plaintiff the relief sought by the complaint.

### FINDINGS OF FACT

1) Mr. Ralph L. Webb has for a number of years since immediately after World War II been in the business of producing and distributing soft drinks. He has lived, so far as is pertinent here, during those years, in Columbus, Mississippi.

---

3. 29 U.S.C.A. § 203(d).

4. 29 U.S.C.A. § 213(b) (1) provides:
"(b) The provisions of Section 207 of this title shall not apply with respect to—

(1) Any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49."

2) During the period since August, 1964, Royal Crown has been incorporated under the laws of the State of Mississippi and during the same period has had offices and places of business at Columbus and Tupelo, Mississippi.

3) During the period since October 25, 1968, defendant Royal Crown has received, stored and produced soft drinks and their ingredients at its Tupelo, Mississippi plant. Prior to that time its receiving, storing, and production efforts were divided between its plants at Columbus and Tupelo, Mississippi. The principal difference in the operations before and after the foregoing date was the cessation of bottling drinks at the Columbus plant. Such work since October, 1968 has been done exclusively at the Tupelo plant.

4) During the period here pertinent, the period since February 4, 1966, defendant:

a) Received bottles, cases, and canned drinks at its Tupelo plant. The bottles and cases come from outside the State of Mississippi and the canned drinks from within the State.

b) Received sugar at Columbus, Mississippi, plant from sources outside the State of Mississippi.

c) Received bottles and cases at the Tupelo plant unloading the same from the truck of the delivering carrier and placing them inside the door of the plant at Tupelo. From there, such supplies were moved to storage in the warehouse from which they were removed as needed.

d) Received all goods during the period here pertinent subject to a company rule that the same be unloaded and otherwise handled upon receipt by casual laborers or by supervisory employees. The sugar at Columbus, Mississippi was apparently so handled. The bottles and other goods received at Tupelo were not handled in accordance with the company rule. Adherence to the company rule prevailed to the extent that supervisory employees sometimes unloaded the bottles onto the floor of the plant from where other employees moved the bottles into storage. The practice in the latter regard was not uniformly followed by any means with the result that several employees regularly operated a forklift or tow motor in unloading and moving the bottles and cases and all employees moved the bottles and cases so that the forklift could pick them up and move them around; and

e) Changed the bottling operations so that no new bottles have been sent from Tupelo to Columbus since October, 1968, but prior to that time bottles and cases were regularly supplied to the Columbus plant and all employees at the Tupelo plant engaged in loading the bottles and cases onto the truck transporting them to Columbus. The evidence clearly shows that from March, 1968, or a little earlier, until the change in bottling operations that no bottles were ordered or received by the Columbus plant (as the evidence tends to indicate had been the usual practice) and the ordering and receiving at Tupelo was done with the needs of the Columbus plant taken into consideration.

5) During the period here pertinent, Royal Crown has had a drink route extending into the State of Alabama. Until the change in bottling operations indicated above, the drinks distributed on the Alabama route were bottled and otherwise handled at the Columbus plant. Since the change in operations, all drinks are produced or handled initially at the Tupelo plant. The sales made in Alabama regularly comprise not less than 8 per cent of Royal Crown's total sales. Substantial portions of that percentage are sales of soft drinks in returnable bottles and such bottles have been and are handled, rebottled, and resold indiscriminately on both Mississippi routes and the Alabama route.

6) During the period here pertinent, salesmen were employed by Royal Crown to distribute its products over routes established by it. Each route salesman is provided by Royal Crown with a truck

and all that is necessary to its continued operation. Title to the truck is in Royal Crown and no lease or other agreement is entered into concerning its use by the salesman and no rent or royalties are collected for its use. The salesmen do not procure vehicular licenses or, for that matter, licenses of any description relating to the operation of the vehicle itself or the sale of soft drinks.

Daily, excepting Saturdays and Sundays, the drink trucks are loaded with an inventory verified by the driver and Royal Crown plant superintendent. Upon the return of the truck from its route, the driver must account for the inventory by checking up his sales and collection with an office employee of Royal Crown. The trucks are loaded and unloaded in or at the Columbus and Tupelo plants by truck helpers at the direction of the drivers and under the general supervision of the plant superintendent.

Almost without exception, on each sales route of Royal Crown, the salesmen have the services of helpers. The helpers report to the plant each morning at times varying from 7:00 a. m. until 8:00 a. m. They ride in the truck of Royal Crown to its customers and there they collect the empties, deliver drinks and otherwise perform tasks necessary to the sale and delivery of Royal Crown's products. The salesmen are paid a weekly salary plus commissions by the case on sales exceeding 500 weekly. The salaries of all Mississippi route salesmen include an amount regularly deducted for the helpers. Royal Crown prepares the pay envelope of the helper from the deduction. No such reduction is made in the Alabama salesman's salary and the Alabama helper is not paid by company envelope. No salesman has in its own right a bookkeeping system, a tax number, State or Federal, insurance or any other accouterment of the administration which is actually conducted with regard to the employment of the helpers. The helpers on the Mississippi routes are, except for minor exceptions, treated exactly as employees of Royal Crown, including entry of their names on the payroll records of Royal Crown. The Alabama route helpers are not carried on the payroll records of Royal Crown but the pay of both the salesman and the helper is computed, prepared, and distributed in the same way as that of salesmen and helpers carried directly on the payrolls of Royal Crown.

It should be noted here in conclusion of this short discussion that neither the salesmen nor the helpers, on the record here, engage, while associated with Royal Crown, in any way in any other business enterprise.

7) On January 30, 1962, the case of Arthur J. Goldberg, Secretary of Labor, United States Department of Labor v. Ralph L. Webb and Clark Pierce, No. 19245, C.A. 5, was dismissed. That case was the appeal of this court's ruling in the same case, sub nom. James P. Mitchell, Secretary of Labor, United States Department of Labor v. Ralph L. Webb and Clark Pierce, Civil Action No. 1174, U.S.D.C. N.D. Miss., Eastern Div. In that case, this court was called upon to an did consider whether employees of the defendant partnership were subject to the provisions of the Fair Labor Standards Act of 1938, as amended,[5] by virtue of receipt of goods from points outside the State of Mississippi and whether the helper on the Alabama route was an employee of the defendant partnership. In that case, this court found as a matter of fact that employment by defendants in the receipt of goods from points outside the State of Mississippi in the period there pertinent had not been proved with sufficiency to compel issuance of the injunctive relief sought. With regard to the Alabama helper, the court found:

It is undisputed that defendants operate a route from their Columbus, Mississippi plant into the State of Alabama, where they engaged in the sale and distribution of bottled soft drinks. It is without dispute that a helper is

5. 29 U.S.C.A. § 201, et seq.

sometimes engaged on the truck going into Alabama, and that such helper is not paid in accordance with the minimum wages provided by the Act nor do defendants keep records with respect to this helper. It is also undisputed that the driver on this route (which is the only one across a state line) is paid by defendants on a straight commission basis with a minimum weekly guarantee. This driver has the sole prerogative of hiring or not hiring a helper and sometimes he does, sometimes he does not. At times, when he had no regular helper, he 'sometimes picked up a boy along the route' and sometimes he did all the work himself. To summarize: The driver of the Alabama truck has the power to hire and fire or, if he chooses, to dispense entirely with the services of a helper. When he does hire and use a helper he pays him from his earnings and is not reimbursed therefor in any way from defendants; such helper is (1) not hired by defendants, (2) not fired by defendants, (3) not controlled by defendants, (4) not required by defendants, and (5) not paid by defendants.

This helper assists in loading filled drinks on the trucks and unloading, loading and sorting filled bottles and empties at the place of business of defendants' customers and unloading empties at defendants' place of business.

Defendants have other drivers whose routes are entirely within the State of Mississippi, for whom defendants pay helpers directly, deducting federal social security and withholding taxes from monies paid to helpers and, in turn, deducting compensation paid to helpers from their drivers' commissions.

The court concluded as a matter of law:

" * * * [A]s a matter of law, this court concludes that the helper on defendants' Alabama route (when such a helper is used) is an employee of the driver-salesman on that route and not an employee of defendants.

The prayer of the complaint for the issuance of an injunction should be and is denied."

8) Ralph L. Webb is the managing agent of Royal Crown. So far as the record here is concerned, he is the only person who has authority to originate and modify employment practices at least as the same relate to standards of pay, hours worked, and duty assignments. He acts directly and indirectly on behalf of Royal Crown in relation to the employees.

9) The complaint herein was filed on May 1, 1969. Allegations of the complaint with respect to any unpaid minimum wages and overtime compensation due at the Tupelo plant are restricted to the period since November 1, 1967.

10) During the period here pertinent, Royal Crown employed Melvin Maxey at a straight salary of $100.00 weekly without regard to the number of hours he worked. Because of seasonal fluctuations in demand for soft drinks, the weekly hours of Melvin Maxey varied. In one third of the workweeks, he worked 50 hours, in another third 48 hours, and in the other 45 hours.

11) During the period here pertinent, other employees of Royal Crown at its Tupelo plant were paid hourly wage rates less than the minimum wage and regularly worked more than 40 hours per workweek.

12) During the period here pertinent, Royal Crown at its Tupelo plant regularly employed helpers and extra plant employees at daily wage rates or $4.00 and $8.00 per day. Such employees regularly worked 8 hours per day.

13) During the period here pertinent, Royal Crown regularly employed truck helpers at its Columbus plant. Such employees regularly worked 40 hours per workweek during the winter months (September-April) and 45 per workweek during the summer months (May–August). For such employment the helpers

were paid daily wage rates which did not yield the minimum wage.

14) During the period here pertinent, salesmen of Royal Crown regularly engaged in making sales of soft drinks in behalf of Royal Crown.

## CONCLUSIONS OF LAW

1) The court has jurisdiction of the parties and the subject matter of this action.

2) During the periods here pertinent, all employees of Royal Crown at its Tupelo plant have been engaged in commerce within the meaning of the Act by virtue of their handling bottles and cases in the practical continuity of their interstate journey from the out-of-state supplier to their resting place in storage in the Tupelo warehouse. During the period of approximately March, 1968, until October 24, 1968, when bottling was exclusively done at Tupelo, the same employees handled bottles and related goods which continued in the stream of commerce to their place of use at the Columbus plant.

3) During the periods here pertinent, all employees of Royal Crown engaged in bottling operations which produced soft drinks for distribution on the Alabama route were engaged in the production of goods for commerce within the meaning of the Act. Which means that all Mississippi helpers, Alabama helpers, Columbus plant employees and Tupelo plant employees after October 24, 1968, have been so engaged.

4) The prior litigation asserted as a plea in bar and discussed in the above findings was not between identical adversaries and will, therefore, not support a plea of res judicata.

5) Furthermore, the prior litigation did not devolve a holding concerned with Mississippi helpers in any way. It did not devolve a holding relating to coverage of the Act by virtue of receipt of goods from outside the State of Mississippi. The decision therein does not, therefore, provide a plea in bar based in the good faith defense provision of the Portal-to-Portal Act of 1947.[6] Which is to say that this court did not in the prior litigation hold that employment of helpers in the collection of returnable bottles was not covered and it did not hold that the practices of Royal Crown in handling goods received from out of state (assuming but not deciding the practices to have been unchanged since the prior litigation) did not constitute engagement in commerce within the meaning of the Act.

6) During the period here pertinent, helpers employed on defendants sales trucks and routes were employees of defendants within the meaning of the Act.

7) During the periods here pertinent, Royal Crown has violated:

a) Section 6 of the Act by paying employees engaged in commerce and in the production of goods for commerce within the meaning of the Act at hourly wage rates less than the required minimum wage;

b) Section 7 of the Act by failing to pay employees engaged in commerce and in the production of goods for commerce within the meaning of the Act wages for employment in excess of 40 hours per workweek at rates not less than one and one-half times the regular rates of pay of such employees; and

c) Section 11(c) of the Act by failing to make, keep and preserve adequate and accurate records of their employees and of the wages, hours, and other conditions and practices of employment maintained by it.

8) Ralph L. Webb has, during all periods here pertinent, been an employer within the meaning of the Act of the employees of Royal Crown.

9) Plaintiff is entitled to the relief prayed for in his complaint and to that end counsel for plaintiff shall prepare an appropriate decree, submit a copy of

6. 29 U.S.C.A. § 251 et seq.

the same to opposing counsel and submit the original to the court.

To the extent that it is necessary to compute underpayments of the minimum wage and overtime compensation, defendant shall produce all time and payroll records reflecting employment by them at Tupelo and Columbus, Mississippi, and make the same available to counsel for plaintiff and other representatives of plaintiff in order that the damages measured by the violations found above can be computed in accordance therewith. Violations with regard to plant employees are assumed to have ceased in October of 1968. All other violations continued to the date of trial and, undoubtedly, to the date of these findings.

The decree contemplated by direction to counsel for plaintiff shall be submitted thirty days after production of the records discussed above and the same shall be produced not later than fifteen days from the entry of these findings and conclusions.