TRUSTEES OF the AMALGAMATED INSURANCE FUND, Plaintiff,

v.

Jerome DANIN and Frank Fredella, Defendants.

Civ. A. No. 84–2503–WF.

United States District Court, D. Massachusetts.

Oct. 10, 1986.

Paul F. Kelly, Segal, Roitman & Goldman, Boston, Mass., for plaintiff.

Anthony M. Fredella, Fredella & Wheeler, Somerville, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

The Trustees of the Amalgamated Insurance Fund (the "Fund"), a multi-employer-employee benefit retirement plan, have brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to recover delinquent payments of Vi-Mil, Inc. ("Vi-Mil"). By this action, the Fund is seeking to recover the delinquent funds from two individual defendants, Jerome Danin and Frank Fredella, the sole shareholders, officers and directors of Vi-Mil.

The Fund has previously obtained state court judgments for $192,948.43 against Vi-Mil. Vi-Mil, however, has been unable to satisfy these judgments. The Fund has moved for summary judgment in this action, arguing that the undisputed facts show, as a matter of law, that defendants are individually liable as "employers" under ERISA for the delinquent contributions. For the reasons set forth below, the Fund's motion for summary judgment is granted.

### I. *Facts*

The undisputed facts relevant to the motion for summary judgment are as follows.

At all relevant times, Vi-Mil was a party to a collective bargaining agreement with the New England Regional Joint Board of the Amalgamated Clothing and Textile Workers Union (the "Union"). Pursuant to the Agreement, Vi-Mil was obligated to make periodic contributions to the Fund.

When contributions became delinquent, the Fund ultimately obtained two state court judgments totaling $192,948.93 against Vi-Mil.

Since the inception of Vi-Mil, defendant Danin has been President of the company and a member of the Board of Directors.

Since the inception of Vi-Mil, defendant Fredella has been the company's Treasurer

and a member of the Board of Directors. Since 1976, Fredella has also been Clerk of the company.

Since 1976, defendants have been the sole members of the Board of Directors. At all relevant times, defendants have been the sole and equal shareholders of Vi-Mil.

In addition to their positions as officers and directors, defendants were employees of Vi-Mil. Defendants acted as co-managers of the Vi-Mil plant, overseeing the day-to-day activities of the company, including its relations with the Union and the Fund. Defendants often worked directly with employees at all levels.

Defendants were the only company officials who were empowered to enter into contracts, including collective bargaining agreements, on behalf of the company.

Defendants together exercised complete control over Vi-Mil's finances, including payments to the Fund. Fredella had authority to issue and sign checks without Danin's signature and consent only for payroll. All other checks, including checks to the Fund, required the joint signatures of Danin and Fredella. No other person was authorized to sign checks on behalf of Vi-Mil.

Vi-Mil employed a bookkeeper who worked solely and directly under the supervision of defendants. The bookkeeper received incoming bills and presented them to defendants for signature. Defendants did not blindly accept the bookkeeper's judgment.

In late 1983, Vi-Mil encountered serious financial difficulties because of the cancellation of a government contract. As the sole owners and directors of Vi-Mil, defendants made the decision to continue operations. Defendants also made the decisions as to which creditors to pay and which not to pay, including the decision not to make contributions to the Fund.

## II. *Discussion*

### A. *Summary Judgment Standard*

Under Rule 56, summary judgment shall enter for the moving party when the evidence shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, "the court must 'look at the record ... in the light most favorable to ... the party opposing the motion....' Similarly the court must indulge all inferences favorable to the party opposing the motion." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Under the "bifurcated standard" of Rule 56(c), the party opposing the motion "must establish the existence of an issue of fact which is both 'genuine' and 'material.'" *Id.* A "genuine" issue must be established by "sufficient evidence ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (citations omitted). The moving party ultimately has the burden of showing that he is entitled to judgment as a matter of law. *White v. Hearst Corp.*, 669 F.2d 14, 17–18 (1st Cir.1982).

### B. *Individual Employer Liability Under ERISA*

ERISA defines "employer" as "any person acting as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). The question to be decided by this court is whether, as a matter of law, under the ERISA definition of "employer," defendants should be held individually liable for the delinquent payments, given the undisputed facts described earlier. Based upon the case law in this district and an analysis of the legislative intent concerning the applicable section of ERISA, this court finds that the defendants are individually liable for the delinquent contributions to the Fund.

#### 1. *Case Law*

Several recent decisions in this district have addressed the issue raised in this action. In *Alman v. Servall Manufacturing Co. and Herman Bank*, C.A. No. 82–0746–

Ma (D.Mass. April 9, 1984), Judge Mazzone found that Herman Bank, a corporate officer and majority shareholder with control of all financial operations, who acted on behalf of his corporation in all matters having to do with benefit plans, qualified as an "employer" under ERISA.

Judge Mazzone's decision in *Alman v. Servall Manufacturing* relied on the Court of Appeals for the First Circuit's holding in *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983). In *Donovan*, the First Circuit used an "economic reality" test in imposing personal liability on a corporate officer for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. Donovan* found that:

> [C]orporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment ... were employers within the meaning of FLSA.

712 F.2d at 1514.

In *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Company*, 635 F.Supp. 9 (D.Mass.1984), Judge Mazzone explained his *Alman v. Servall Manufacturing* holding. In particular, Judge Mazzone provided a detailed analysis of the propriety of the analogy between the FLSA definition of employer and ERISA's virtually identical definition. *Massachusetts State Carpenters* at 12–14.

Other members of this district court have concurred with Judge Mazzone's rulings and reasoning in *Alman v. Servall Manufacturing* and *Massachusetts State Carpenters*. In *Rubenstein v. Tri-State Transport*, 646 F.Supp. 1 (D.Mass.1984), Judge Skinner granted summary judgment against a corporate officer based on the holding in *Alman v. Servall Manufacturing*. In *Alman v. Franks Sportwear Co.*, C.A. 84–2042–S (D.Mass. January 24, 1985), and in *Alman v. Parkay Mfg. Inc.*, C.A. 84–1938–W (January 31, 1985), Judge Skinner denied defendants' motions for summary judgment, relying on *Alman v. Servall Manufacturing* and *Massachusetts State Carpenters.*

Judge Skinner also decided a case involving the defendants in this case. In *Alman v. Danin, Fredella and Vi-Mil, Inc.*, C.A. No. 84–0050–S (D.Mass. November 13, 1985), *aff'd*, 801 F.2d 1 (1st Cir.1986). Judge Skinner pierced the corporate veil of Mohawk Manufacturing Company (an entity not involved in this case) to impose individual liability on the defendants. Judge Skinner specifically found, however, that the individual defendants could not be held personally liable as "employers" under ERISA, because plaintiff had failed to show that the defendants had "acted on behalf of the corporation with respect to [the] employee benefit plan in some significant way...." *Id.* at 4–5.[1]

In addition to these holdings, in *Alman v. Richards et al.*, C.A. No. 84–547–C, (D.Mass. June 20, 1984), Judge Caffrey denied, without opinion, defendant's motion to dismiss claims of individual liability of corporate officers. In *Alman v. Beverly Rose Sportswear*, C.A. No. 85–1677–K (D.Mass. May 6, 1985), Judge Keeton granted an *Ex Parte* Attachment by Trustee Process against an individual defendant's bank account, because plaintiff had "demonstrated a reasonable likelihood of recovering judgment ... against Raymond Tubbs, individually."

Two circuits have rejected the "economic reality" test, however. In *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513 (9th Cir.1984), the Ninth Circuit indicated that individual liability under ERISA may only be imposed if the court finds that the corporate veil should be pierced. *Id.* at 515.

---

1. As the district court in *Alman v. Danin* did not find the individuals to be "employers" within the meaning of ERISA, the First Circuit's decision affirming the piercing of the corporate veil to impose personal liability did not directly address the issue of when, if ever, an individual acting for a corporation may be deemed an "employer" for the purpose of ERISA.

In *Solomon v. Klein,* 770 F.2d 352 (3d Cir.1985), the Third Circuit rejected the *Massachusetts State Carpenters* analysis, particularly its analogy of ERISA to the FLSA and its reliance on *Donovan v. Agnew,* and stated that there is nothing in the legislative history of ERISA to indicate that Congress intended to impose personal liability for ERISA contributions to high-ranking officers of corporations. *Id.* at 354. Instead, the Third Circuit relied on the reasoning of *Combs v. Indyk,* 554 F.Supp. 573, 575 (W.D.Pa.1982), finding that unless the corporate veil should be pierced, personal liability may not be imposed.

### 2. *Congressional Intent*

The legislative history of ERISA does not directly address the definition of "employer" used in the ERISA statute. However, as described below, relevant legislative intent can be inferred from Congress' selection of a definition of "employer" that had been the subject of judicial interpretation.

When the ERISA statute was enacted in 1974, several definitions of "employer" had been used in earlier labor statutes. In enacting ERISA, Congress adopted the definition of "employer" contained in the FLSA.[2] It is proper to presume that Congress was aware of the decisions interpreting the FLSA definition of "employer" and intended that the law developed in those decisions be employed in the context of ERISA. *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978).

When Congress enacted ERISA, the FLSA definition of "employer" had been interpreted as effectively circumventing the common law definition of "employer." The Supreme Court had recognized the "expansive" definition of "employer" contained in the FLSA. *See Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973). In addition, lower courts had consistently found that the FLSA definition of "employer" enlarged the common law to include individuals who owned and managed corporations. *See Fortuna Broom Co. v. Wirtz,* 379 F.2d 327, 328 (5th Cir.1967); *Hodgson v. Royal Crown Bottling Co.,* 324 F.Supp. 342, 347, 352 (N.D.Miss.1970), *aff'd,* 465 F.2d 473 (5th Cir.1972); *Shultz v. Chalk-Fitzgerald Construction Co.,* 309 F.Supp. 1255, 1257 (D.Mass.1970); *Brennan v. Jeffries,* 398 F.Supp. 471, 473–74 (D.Ariz.1973), *aff'd,* 77 Lab.Cas. (CCH) ¶ 33,305 (9th Cir.1975). Therefore, Congress may properly be presumed to have recognized that courts were likely to interpret the ERISA definition of "employer" as expansively as they had interpreted the nearly identical language of the FLSA.

The conclusion that Congress intended an expansive definition of "employer" becomes even more compelling in light of the evolution of the definition of "employer" in the National Labor Relations Act ("NLRA"). When Congress initially enacted the NLRA, the legislation contained a definition of "employer" similar to the one later used in the FLSA. However, when the National Labor Relations Board broadly interpreted the scope of "employer" under the NLRA, Congress, in the Taft-Hartley Act, amended the NLRA, using precise, new language to limit the definition of employer. *See Donavon v. Agnew,* 712 F.2d at 1512.[3] Therefore, if Congress had intended ERISA's definition to be interpreted differently from the FLSA's definition, it could have imported the Taft-Hartley language to ERISA. Because Congress chose the FLSA definition of "em-

---

**2.** The FLSA definition of "employer" includes: "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This language is virtually identical to the ERISA definition of "employer." 29 U.S.C. § 1002(5).

**3.** The Taft-Hartley Act changed the definition of "employer" from "any person acting in the inter-

est of an employer" to "any person acting as an *agent* of an employer." (emphasis added) The legislative history explains that Congress changed the language to narrow the definition of "employer." *See* H.Rep. No. 510, 80th Cong., 1st Sess. (1947), *reprinted in* 1947 U.S.Code Cong. & Admin.News 1135, 1137.

ployer" rather than the more limited Taft-Hartley language, this court finds that Congress intended that the ERISA definition of "employer" be interpreted in a manner consistent with the interpretation of the FLSA definition of "employer." Thus, under appropriate, narrow circumstances, Congress intended to impose individual liability on owner-managers of corporations under ERISA, even if piercing the corporate veil would not ordinarily be appropriate[4].

### 3. *Defendants' Individual Liability*

As indicated earlier, in *Donovan v. Agnew,* the First Circuit recognized a narrow but meaningful set of circumstances in which individuals may be held personally liable under the FLSA for a corporation's failure to pay wages, even where the corporation is not a sham. More specifically, in *Donovan v. Agnew* the First Circuit held that personal liability could properly be imposed on:

> [C]orporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment.

712 F.2d at 1514.

■ Applying the *Donovan v. Agnew* considerations to the ERISA context indicates that personal liability should be imposed on individuals who are (1) corporate officers with significant ownership interests; (2) who had control of significant aspects of the corporation's day to day functions; (3) including acting on behalf of the corporation with respect to the pension fund; and (4) who personally made the decision to continue operations despite financial adversity during the period for which payments are claimed.

■ In this case the material facts are not in dispute. These facts demonstrate that the defendants are personally liable for the delinquent payments to the Fund. Danin and Fredella were each officers, employees, and fifty percent shareholders of Vi-Mil during the relevant period. Each was deeply involved in the day-to-day operations of the company, including negotiating collective bargaining agreements and dealing with the Union and the Fund. Their duties involved making payments to the Fund by checks, which both defendants were required to sign. When Vi-Mil encountered financial adversity, the defendants decided to continue operations and determined which creditors to pay and which not to pay; in the process they decided that Vi-Mil would not make the payments to the Fund which are at issue in this case. Under these circumstances, the defendants are personally liable for the delinquent payments.[5]

---

4. Although the First Circuit was not required to address the issue presented by this case in deciding *Alman v. Danin,* its statements in that case regarding the relationship of corporate form to the purposes of ERISA reinforce this court's conclusion that Congress intended that with regard to ERISA, as with the FLSA, the term "employer" should be broadly construed. In *Alman v. Danin* the First Circuit stated, among other things:

> ERISA, the statute sought to be enforced here, cannot be said to attach great weight to corporate form. Indeed, deferring too readily to the corporate identity may run contrary to the explicit purposes of the Act. Congress enacted ERISA in part because many employees were being deprived of anticipated benefits, which not only reduced the financial resources of individual employees and their dependents but also undermined the stability of

industrial relations generally. *See* 29 U.S.C. § 1001 (1982) (statement of congressional findings and declaration of policy); H.Rep. No. 807, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4670, 4676. Allowing the shareholders of a marginal corporation to invoke the corporate shield in circumstances where it is inequitable for them to do so and thereby avoid financial obligations to employee benefit plans, would seem to be precisely the type of conduct Congress wanted to prevent.

*Alman v. Danin,* 801 F.2d 1, 4 (1st Cir.1986).

5. Defendants argued at hearing, but not by any memoranda or affidavits, that a strike settlement agreement entered into by the Union and Vi-Mil on August 30, 1984 contained a waiver of the plaintiff's right to recover from defendants individually. The court ordered the defendants to file further memoranda if they wished to

### III. *Conclusion*

For the reasons stated above, plaintiff's motion for summary judgment is hereby GRANTED. The parties are directed to submit jointly by October 31, 1986 a proposed judgment consistent with this decision.

pursue this claim. The defendants did not do so.

In any event, the court finds the defendants' claim unpersuasive. Paragraph 6 of the settlement agreement, which allegedly contains the waiver, does not appear to waive any rights. In addition, paragraph 7 of the settlement agreement expressly provides that if the employer, Vi-Mil breaches its obligations under the agreement, including the obligation to make payments to the Fund, the parties may pursue all rights and remedies. There is no dispute that Vi-Mil breached its obligations.

Therefore, the court finds that no provision in the strike settlement agreement constitutes a waiver of the plaintiff's right to collect from Danin and Fredella, as individuals, under ERISA.