EMPLOYEE PAINTERS' TRUST; Western Washington Painters Defined Contribution Pension Trust; Western Washington Apprenticeship and Training Trust; International Brotherhood of Painters and Allied Trades; Painters District Council No. 5, Plaintiffs–Appellants,

v.

J & B FINISHES, doing business as Northwest Interiors, a Washington corporation; William G. Canon; Pam S. Canon, husband and wife, individually and as a marital community, Defendants–Appellees.

EMPLOYEE PAINTERS' TRUST; Western Washington Painters Defined Contribution Pension Trust; Western Washington Apprenticeship and Training Trust; International Brotherhood of Painters and Allied Trades; Painters District Council No. 5, Plaintiffs–Appellees,

v.

J & B FINISHES, doing business as Northwest Interiors, a Washington corporation, et al., Defendants,

and

William G. Canon; Pam S. Canon, husband and wife, individually and as a marital community, Defendants–Appellants.

Nos. 95–35044, 95–35103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1996.

Decided March 1, 1996.

---

John Ranquet, Seattle, Washington, for plaintiffs-appellants-cross-appellees.

Mel Kang, Ekman & Bohrer, Seattle, Washington, for plaintiffs-appellants-cross-appellees.

Richard H. Robblee, Hafter, Price, Rinehart & Robblee, Seattle, Washington, for plaintiffs-appellants-cross-appellees.

James P. Davis, II, Casey Gordon Davis, P.S., Bellevue, Washington, for defendants-appellees-cross-appellants.

Karen A. Gruen, Short Cressman & Burgess, Seattle, Washington, for defendants-appellees-cross-appellants.

Before: BROWNING, WRIGHT, and CANBY, Circuit Judges.

PER CURIAM:

Painters District Council No. 5 (the union), the Employee Painters' Trust, and three other trust funds appeal a grant of summary judgment against them in their suit to impose personal liability upon William Canon, president of Northwest Interiors, Inc., for unpaid union check-off dues and trust fund contributions under a collective bargaining agreement and various trust agreements relating to employee pensions. Canon cross-appeals the denial of his request for an award of attorney's fees. We reverse the summary judgment in favor of Canon and affirm the denial of attorney's fees.

I.

Canon signed a two-page counterpart or "me-too" agreement with the union that bound the "employer" to the terms of a collective bargaining agreement between the union and the multiemployer Drywall Association and to the terms and conditions of the trust agreements.

Canon was not provided with copies of the collective bargaining or trust agreements prior to signing the counterpart agreement. Under the agreements, Northwest was responsible for making trust fund contributions on behalf of its employees, abiding by the trust agreements, and deducting from pay and remitting "check-off" dues and special assessments to the union. The agreements also provided that corporate officers and the signatory of the agreement would be personally liable for breaches of contract and unpaid trust fund contributions. These personal liability provisions were not called to Canon's attention before he signed the counterpart agreement.

Northwest became delinquent in its contributions to the trusts and failed to remit dues to the union. The union and the trusts brought the present action against Canon in his individual capacity, seeking to recover the unpaid amounts under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and section 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145. The district court granted summary judgment for Canon, finding Canon was not personally liable for the delinquent payments. The court denied Canon's request for attorney's fees.

II.

The union and the trusts base their claim solely on the personal liability provisions of the collective bargaining and trust agreements. The district court rejected the claim in reliance on the Second Circuit's decision in *Cement & Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29 (2nd Cir.1994).

In *Lollo*, a union and several trust funds sought to hold corporate officers personally liable for unpaid contributions and union dues pursuant to personal liability provisions in a collective bargaining agreement. The Second Circuit noted that state law may be resorted to in labor agreement disputes to determine the rule that will best effectuate federal policy, and adopted from New York law the rule that "an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Id.* at 35 (internal quotations and citations omitted).

Applying this rule, the court found Jeffrey Lollo, the corporation's president and the signatory of the collective bargaining agreement, personally liable because the personal liability provision was prominently displayed immediately above the signature line, Jeffrey Lollo's name was written into the contract above the signature line, and the personal

liability provision had been heavily negotiated. *Id.* The court declined to impose personal liability on other corporate officers who were not identified in the agreement, did not sign the agreement, and could be bound, if at all, only by an ambiguous provision on page 34 of the 55–page agreement. *Id.*

■ The district court followed *Lollo* as "a matter of federal common law." Generally, federal law governs parties' rights in actions under the LMRA and ERISA. *See Kemmis v. McGoldrick,* 706 F.2d 993, 996 (9th Cir. 1983) (LMRA); *Building Service Employees Pension Trust v. American Bldg. Maintenance Co.,* 828 F.2d 576, 578 (9th Cir.1987) (ERISA). Because many problems will lie in the "penumbra of express statutory mandates," *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1499 (9th Cir.1984) (quoting *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957)), Congress has authorized the courts to "formulate a nationally uniform federal common law" to supplement the provisions and policies of federal labor legislation. *Id.* at 1500.

■ The district court, citing *Menhorn,* 738 F.2d at 1499, concluded that when a federal court resorts to state law to find the rule that best effectuates federal policy, the adopted state law rule "will be absorbed as federal law." We have found nothing to suggest, however, that one circuit's decision to adopt a particular rule of state contract law to resolve a labor agreement dispute binds all other circuits to apply the same rule. *Menhorn* merely reiterates the rule stated in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957), that "any state law applied ... will be absorbed as federal law *and will not be an independent source of private rights.*" *Id.* at 1499 (emphasis added). The thrust of *Menhorn* is that jurisdiction over labor agreement disputes remains federal— that state law will not provide a source of private rights independent of the federal statute. Although *Lollo* is persuasive authority, it remains our obligation to adopt the rule that best comports with the interests served by the federal regulatory scheme. *See PM Group Life Ins. Co. v. Western Growers Assur. Trust,* 953 F.2d 543, 546–47 (9th Cir.1992).

■ On occasion, we have looked to state contract law "to inform federal principles affecting the respective rights of parties but only where 'it effectuates the policy that underlies federal labor legislation.'" *Waggoner v. Dallaire,* 649 F.2d 1362, 1365 (9th Cir.1981) (quoting *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1109 (9th Cir.1979)); *see also Kemmis,* 706 F.2d at 996; *Building Service Employees Pension Trust,* 828 F.2d at 578. In light of established Ninth Circuit precedent addressing the enforcement of labor agreements, we decline to join the Second Circuit in adopting state law as the law to be applied to the issue of labor contract interpretation involved here.

We have held that when "clear and specific language in a labor agreement is at issue, federal courts are uniform in their strict interpretation of such language." *Irwin v. Carpenters Health and Welfare Trust Fund,* 745 F.2d 553, 556 (9th Cir.1984). *Irwin,* a sole proprietor, executed a me-too agreement binding him to a master labor agreement. Irwin failed to comply with the master agreement's explicit notice provision prior to terminating the agreement. We rejected Irwin's contention that we should look to more lenient state contract law, finding federal labor policy necessitates strict construction of the clear and specific terms of a labor agreement. *Id.* at 557.

■ We strictly enforced the terms of a similar labor contract in *Operating Engineers Pen. Trust v. Cecil Backhoe,* 795 F.2d 1501 (9th Cir.1986). Cecil signed short-form agreements that bound his company to a master labor agreement between a union and a contractors association. When a trust fund sued for unpaid contributions, Cecil argued the short form agreements were not binding contracts because he was not informed of and did not understand the legal consequences of signing. We held that whether or not Cecil read the master labor agreement or understood the consequences of signing the short form agreement, he was bound by the terms of the master labor agreement. *Id.* at 1505.

A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it. *Id.* Parties to a collective bargaining agreement are conclusively presumed to have equal bargaining power, and union agents have no duty to explain to employers the terms, conditions, or consequences of a collective bargaining agreement. *Id.* at 1504–05.

■ This case is governed by *Irwin* and *Cecil Backhoe.* There is no question the collective bargaining and trust agreements contemplated personal liability on the part of Canon. The personal liability provisions were explicit and unambiguous. There is no allegation of misrepresentation by union agents. Cannon was familiar with the basic operation of counterpart agreements. Although Canon did not read the agreements or understand their potential for imposing personal liability, he bound himself to those agreements when he signed the counterpart agreement. Personal liability in such circumstances may be harsh for the signatory, but nothing suggests it is contrary to federal labor policy.

### III.

Because Canon was personally liable under the collective bargaining and trust agreements as a matter of law, we affirm the district court's denial of his request for attorney's fees.

The trusts' request for an award of attorneys fees on appeal is granted. 29 U.S.C. § 1132(g)(2)(D); *Cecil Backhoe,* 795 F.2d at 1508 (trust funds that successfully sue for unpaid contributions shall receive a mandatory award of reasonable attorney's fees).

Both the Union and the Trusts are awarded costs on appeal. Costs are assessed against Canon.

AFFIRMED in part; REVERSED in part.