**Gerald M. SULLIVAN, not individually but as trustee of Plumbers Pension Fund, Local 130, U.A., et al., Plaintiff–Appellee,**

v.

**Terry COX d/b/a Central Emerald, Defendant–Appellant.**

No. 95–3017.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1996.

Decided March 12, 1996.

■■■■■■■■■■■■■

Paul V. Esposito (argued), Douglas A. Lindsay, Thomas E. Brabec, Blake T. Lynch, John William Loseman, Lewis, Overbeck & Furman, Chicago, IL, for Plaintiff-Appellee.

William F. Fitzpatrick (argued), Callahan & Fitzpatrick, Oak Lawn, IL, for Defendant-Appellant.

Before CUMMINGS, BAUER and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

At issue is whether an individual accepted personal responsibility for delinquent contributions to benefit plans under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1145 ("ERISA"), when he signed collective bargaining agreements as "President" of the corporation, but failed to provide the full legal name of the corporation as called for by the contract. The district court held that individual liability was appropriate and entered summary judgment. Because Illinois contract law is to the contrary, we now reverse.

Plaintiff Gerald M. Sullivan is trustee of four multiemployer benefit plans ("Funds") that were established under collective bargaining agreements between the Chicago Journeymen Plumbers' Union, Local 130, U.A. ("Union") and various employers and employer associations. Plaintiff as trustee filed suit against Terry Cox, an individual doing business as Central Emerald. The complaint sought a judgment against Cox personally for the amount of delinquent contributions due to the Funds in violation of ERISA, 29 U.S.C. §§ 1132, 1145. Cox denied in his answer that he was personally liable, stating that he never signed the relevant agreements in his individual capacity, but as president of Central Emerald, an Illinois corporation owned and operated by him and his wife. Because he had never employed plumbers in his individual capacity, Cox contended that only the corporation could be liable for delinquent payments.

The key document in this dispute is an Interim Agreement signed by Cox on August 5, 1992. The Agreement stated that negotiations had been concluded for an areawide collective bargaining agreement effective June 1, 1992, through May 31, 1995, but that the agreement had not yet been printed. It further stated as follows:

> The Employer and Union agree to be bound by the terms and provisions of the June 1, 1992 collective bargaining agreement between the Union and the PCA [Plumbing Contractors Association] and to execute an agreement adopting the terms and provisions of said collective bargaining agreement, when printed.

In the space subtitled "Correct Legal Name of Business," Cox wrote "Central Emerald," and under the heading "Type of Entity," Cox checked the space beside "Corporation" (rather than "Proprietorship" or "Partnership"). On the Signature line, Cox signed "Terry Cox President." Cox also signed a Contractor's Registration Statement the same day using his own name in spaces marked "Firm Name" and "Signature of Contractor."

■■■ The district court entered an Agreed Order requiring an audit by the benefit plans' auditors. The audit revealed delinquent contributions of $106,746.53, plus penalties and interest. On this basis, Plaintiff successfully moved for summary judgment against Cox on its ERISA claim. Section 1145 of ERISA states,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. ERISA essentially imposes a federal obligation on employers who contractually agree to contribute to employee pension plans. Employers who fail to meet the Section 1145 obligation are liable for federal remedies, court costs, attorney's fees, and liquidated damages or interest under 29 U.S.C. § 1132(g)(2). The parties do not dis-

pute, and indeed could not dispute, that Section 1145 only creates a federal ERISA obligation for employers who are obligated to make contributions even absent the statute—in other words, those who are obligated under state law. *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1193–1194 (7th Cir. 1989); *Plumbers' Pension Fund, Local 130, U.A. v. Niedrich*, 891 F.2d 1297, 1299–1301 (7th Cir.1989), certiorari denied, 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499; see also *Cement & Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36–37 (2d Cir.1994); *Scarbrough v. Perez*, 870 F.2d 1079 (6th Cir. 1989); *International Bhd. of Painters & Allied Trades Union v. George A. Kracher, Inc.*, 856 F.2d 1546 (D.C.Cir.1988); *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving*, 845 F.2d 23 (1st Cir.1988). These cases rejected claims that liability for delinquent pension contributions should extend to a corporation's chief officer under Section 1145. Judge Breyer explained the rationale for this conclusion in *Starrett Paving*, which rests primarily on legislative statements to the effect that ERISA was intended to impose obligations only on parties who were *already* contractually obligated to make contributions. 845 F.2d at 25. Thus, turning to the statute's language, not only must a potentially liable party be an "employer" under Section 1145, he must also be an "employer who is obligated to make contributions."

■ The cases recognize that Congress did not intend through Section 1145 to upset the general rule that individuals are not liable for corporate debt, see *George A. Kracher*, 856 F.2d at 1550; rather, the general rule is only upset where individuals contractually accept responsibility for corporate liability, thus becoming "employers obligated to make contributions" under Section 1145. There may be other exceptions not at issue here. For example, there are no allegations here that this is a corporate-veil piercing case-that under state or federal law Cox is the corporation or is its alter ego. Nor are there allegations that Cox, as a corporate official, committed fraud or acted in concert with a fiduciary to breach a fiduciary duty. We express no opinion as to whether such allegations would fall into an exception to the rule

that Section 1145 does not itself create individual liability, though our cases suggest that such exceptions exist. See *Levit*, 874 F.2d at 1193–1194.

Given this understanding of the law, when the district court imposed Section 1132(g)(2) liability on Cox, it necessarily concluded that Cox was not merely an "employer," but an employer who was contractually obligated to make contributions to the Funds in his individual capacity. Cox does not dispute on appeal the conclusion that he was an employer, only that he was contractually obligated in his individual capacity. We review the district court's decision de novo, construing the record in the light most favorable to the non-moving party, *East Food & Liquor, Inc. v. United States*, 50 F.3d 1405, 1410 (7th Cir.1995), and we will reverse a summary judgment if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

■ The question here is whether the district court properly concluded that no genuine issue of material fact exists as to whether Cox, by signing the Interim Agreement and the Registration Statement, bound only the corporation. The court was persuaded that no genuine issue of material fact exists for two reasons: first, Cox failed to provide the "Correct Legal Name of Business" as required by the Interim Agreement, writing only "Central Emerald" when the corporation's full name is "Central Emerald Sewer Service, Inc."; second, Central Emerald's 1992 Annual Report indicated that Jane Cox, his wife, held all offices in the corporation such that he had no authority to bind the corporation. *Sullivan v. Cox*, 890 F.Supp. 759, 762 (N.D.Ill.1995).

■ In order to determine the materiality of factual disputes, it is necessary to determine first the governing principles of law. For example, it is not clear from the district court's opinion why Cox's failure to provide the corporation's full legal name is dispositive on the issue of personal liability. If the contracting parties' intent is a relevant factor under the controlling law, failure to write the full name is certainly not dispositive; to the

contrary, mention of the corporate entity might be evidence of an intent to bind the corporation. ERISA does not contain a body of law governing contract interpretation, though it does supersede all state laws that relate to employee benefit plans. 29 U.S.C. § 1144. Courts must therefore fashion federal common law to govern ERISA suits in an effort to promote uniformity, turning to state law only when consistent with the policies underlying ERISA. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.1990) (en banc), certiorari denied, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41. In cases arising under Section 1145, federal courts have consistently applied state contract law, so long as the state law is not contrary to ERISA. See *Rockney v. Blohorn*, 877 F.2d 637, 643–644 (8th Cir.1989); see also *Lollo*, 35 F.3d at 35, 37. Given the language and understanding of Section 1145, using state contract law here would not be contrary to the purposes of ERISA. As we have said, Section 1145 applies only to employers with contractual obligations that preexist (or exist notwithstanding) ERISA; thus the statute presumes another body of law will govern those contractual obligations in the absence of ERISA.

 We therefore turn to Illinois law for the governing principles of interpretation. The Illinois Supreme Court has stated, "When an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Wottowa Ins. Agency, Inc. v. Bock*, 104 Ill.2d 311, 315–316, 84 Ill. Dec. 451, 453, 472 N.E.2d 411, 413 (1984). Where language in the document conflicts with the apparent representation by the officer's signature, an issue of fact is created. *Id.* In *Knightsbridge Realty Partners, Ltd–75 v. Pace*, 101 Ill.App.3d 49, 56 Ill.Dec. 483, 427 N.E.2d 815 (1st Dist.1984), relied upon by *Bock*, the court found that defendant's signature followed by the word "President" evinced an intent to sign in a representative capacity, but held that a genuine issue of material fact existed only because the contract stated that defendant would later sign a personal guarantee. 101 Ill.App.3d at 53, 56 Ill.Dec. 483, 427 N.E.2d 815; accord *Ad-*

*dison State Bank v. National Maintenance Management, Inc.*, 174 Ill.App.3d 857, 124 Ill.Dec. 313, 529 N.E.2d 30 (2d Dist.1988). Only an officer who signs his name without more may be individually liable on the contract. *84 Lumber Co. v. Denni Constr. Co.*, 212 Ill.App.3d 441, 443, 156 Ill.Dec. 644, 645, 571 N.E.2d 231, 232 (5th Dist.1991) (finding that defendants made themselves personally liable by signing contract with their signatures and no more). The only Illinois authority relied upon by Plaintiff in this case clearly states that an individual avoids personal liability where he discloses the name of the principal at the time of contracting. *Lankton–Ziegle–Terry & Assocs., Inc. v. Griffin*, 156 Ill.App.3d 765, 767, 109 Ill.Dec. 124, 125, 509 N.E.2d 785, 786 (3d Dist.1987).

Based on Illinois law, it is clear on the face of the Interim Agreement that Cox signed in a representative capacity. His signature was followed by the word "President," he listed the name of the corporation, and he checked the box marked "Corporation." We further find nothing in the Interim Agreement that contradicts his intent to bind only the corporation. It is immaterial that Cox wrote "Central Emerald" rather than the full legal name of the business. Illinois law is clear that the intent of the parties governs and that intent is revealed by inclusion of the corporate identity or by inclusion of the title "President." We therefore decline to read into Illinois law the ridiculous formality that, because the contract called for the "Correct Legal Name of Business," no other name would suffice except that on file with the Illinois Secretary of State.

 So it appears that Cox rather than Plaintiff was entitled to summary judgment; however, two material factual disputes remain. The first is whether Cox had authority to bind the corporation. The district court found that he did not, basing its decision on an Annual Report that listed Jane Cox as president of the corporation. However, the Annual Report was prepared and filed in December 1991, approximately nine months before Cox signed the Interim Agreement. Further, Cox's affidavit states that he told the Union's business agent that he intended

to sign the documents on behalf of the corporation and that he was told by the agent to sign as president; Cox also states in the affidavit that he signed the Interim Agreement as president of Central Emerald. Under Illinois law, a genuine issue of material fact exists. Not only is the question of Cox's actual authority at issue—whether he was president or otherwise had actual authority— but the question of apparent authority is also at issue, especially given that the corporation was owned and operated only by Cox and his wife. Cox could have bound the corporation under either principle. *Chase v. Consolidated Foods Corp.*, 744 F.2d 566, 568–569 (7th Cir.1984) (citing *Schoenberger v. Chicago Transit Auth.*, 84 Ill.App.3d 1132, 1137–1138, 39 Ill.Dec. 941, 946, 405 N.E.2d 1076, 1081 (1st Dist.1980)). The evidence submitted both in support of and in opposition to the motion for summary judgment is surprisingly scant on this issue (no affidavit was submitted from either Jane Cox or the Union's business agent), but we are persuaded that summary judgment is inappropriate given the obvious intent of Cox to bind the corporation and the fact that Cox and his wife owned and operated the corporation. Whatever inferences are to be drawn from these facts must be done in favor of the non-moving party.

The second factual issue is whether Cox's signature on the Registration Statement made him personally liable despite the Interim Agreement. In the space marked "Firm Name," Cox wrote "Terry Cox" and made no mention of the corporation on the half-page form. Plaintiff thus argues that Cox's failure to mention the corporation binds him personally to the terms of the collective bargaining agreement. Such an inference on the face of the documents is untenable. The stated purpose of the Registration Statement is to register contributing contractors under the Interim Agreement, whereas the purpose of the Interim Agreement was to bind the signatory to the collective bargaining agreement. Plaintiff has not supported its motion for summary judgment with sufficient evidence establishing either that the Registration Statement was intended to create obligations that supplemented or superseded those accepted under the Interim Agreement, or that

Cox intended to bind himself personally by signing the Registration Statement. Without further evidence regarding the parties' intent, basing summary judgment on the Registration Statement would be improper.

We hold that material factual issues remain such that a reasonable jury could find that Cox signed the documents in a representative capacity. Summary judgment was therefore inappropriate. Because our holding precludes summary judgment against Cox in his individual capacity (the corporation was not sued), we express no opinion on Cox's alternative argument regarding the sufficiency of the audit report under the summary judgment standard. Were it not for the sparse record regarding Cox's actual or apparent authority to bind the corporation and the circumstances surrounding the Registration Statement, we would have remanded for dismissal of the complaint against Cox in his individual capacity. But as it stands, the judgment of the district court is reversed and the case remanded for further proceedings.