### CENTRAL LABORERS' PENSION FUND, et al., Plaintiffs,

v.

### DEMEX GROUP, INC., and Edward Fisher, Defendants.

No. 08–3069

United States District Court, C.D. Illinois, Springfield Division.

Signed January 27, 2016

---

Britt W. Sowle/Cavanagh & O'Hara, Suite 240, 333 Salem Place, Fairview Heights., IL 62208, John A. Wolters/Cavanagh & O'Hara, 2319 W. Jefferson, Springfield, IL 62702, Attorneys For Plaintiffs

James P. Baker/Baker Baker & Krajewski, 415 S. 7th, Springfield, IL 62701, Attorney For Defendants

## OPINION

RICHARD MILLS, United States District Judge:

Plaintiffs Central Laborers' Pension, Welfare and Annuity Funds et al., and Defendant Demex Group, Inc., entered into a Stipulated Judgment Order, which provided that Judgment would be entered in favor of the Plaintiffs and against Defendant Demex Group, Inc., in the total amount of $330,816.31 for delinquent contributions, liquidated damages, audit costs and attorney's fees.

Defendant Edward Fisher is not a party to that Judgment Order.

The Parties have filed Briefs as to whether Judgment should also be entered against Defendant Edward Fisher, personally.

That is the single issue before the Court.

In short, the Court finds that it should. But first, the background and the law.

## I.  INTRODUCTION

The Plaintiffs, Central Laborers' Pension Fund, Central Laborers' Annuity Fund, Southern Illinois Laborers' Welfare Fund, Southern Illinois Laborers' Annuity Fund, *et al.*, are employee benefit funds administered pursuant to the terms and provisions of the Declarations of Trusts creating said funds and are required to be maintained and administered in accordance with the provisions of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 140 *et seq.*, and the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001 *et seq.*

The Central Laborers' Pension, Welfare and Annuity Funds are based in Jacksonville, Illinois, and are the collection agents for the other named Plaintiffs which are employee benefit funds, labor organizations, labor management committees, and/or funds established pursuant to collective bargaining agreements.

The Plaintiffs filed this action seeking to recover employer contributions pursuant to Section 515 of ERISA, 29 U.S.C. § 1145.  On June 27, 2011, following a stipulation, a judgment was entered in favor of the Plaintiffs against Defendant Demex Group, Inc. ("Demex"), in the amount of $330,816.31.  The Plaintiffs seek to obtain a judgment against Edward Fisher and impose personal liability for the judgment amount.

The Plaintiffs contend that Edward Fisher signed two Memorandum of Agreements imposing personal liability based on his status as an officer of Demex.  Those agreements incorporated the Plaintiffs' Trust Agreements which provide for personal liability for Edward Fisher.  The Plaintiffs further assert that Edward Fisher signed contribution report forms that also imposed personal liability on him. They allege that under existing case law, state contract law and policy considerations under ERISA, Edward Fisher should be held personally liable for the delinquent contributions owed by Demex.

Edward Fisher claims that, even if there are writings which in certain circumstances could impose personal liability for delinquent contributions, the agreements relied upon by the Plaintiffs in this case do not do so.

## II.  FACTUAL BACKGROUND

### (A)

Demex is a demolition/excavation contractor which, during the time period relevant to this lawsuit, engaged in business from a facility located in Manito, Illinois. Demex is an employer engaged in an industry within the meaning of ERISA, 29 U.S.C. §§ 1002(5), (11), (12) and (14).  At all relevant times, Edward Fisher served as President of Demex.  Before working for Demex, Edward Fisher worked as an equipment operator in the demolition field.

Prior to April of 2007, Edward Fisher owned 50% of the capital stock of Demex. The remaining 50% was owned equally by Billie Moore and William Fisher.  Edward Fisher and William Fisher are brothers and Billie Moore is the brother-in-law of the Fishers.

In April of 2007, Billie Moore left Demex to start his own tire and auto repair business.  Since April of 2007, Edward Fisher has owned 62.5% of the capital stock in Demex and the remaining 37.5% has been owned by William Fisher.  In April of 2009, William Fisher left the company but retained 37.5% of the stock of the Defendant's corporation.

The Defendants allege that Billie Moore served as the Treasurer of Demex and, in this capacity, he was the principal account-

ing and financial officer of the corporation and was responsible for monitoring the financial activities of Demex. However, Edward Fisher testified that it was he who had final and ultimate authority over what creditors or obligations were paid.

The Defendants assert that Billie Moore managed the office and an accountant hired by Demex managed its financial documents. Additionally, Billie Moore had final say over what expenses were to be paid. Although Edward Fisher initially testified that Moore had the "final say" over what bills were paid, he later admitted that he himself had final authority. Edward Fisher also stated that he reviewed monthly expenses and would approve payment of monthly expenses.

The Defendants contend that prior to working for Demex, Edward Fisher had never held a position which involved the preparation of payroll records or gathering of payroll records or gathering together and preparing a payroll. He never had a responsibility for preparing documents related to employees for governmental bodies such as unemployment or tax withholding documentation. Moreover, Edward Fisher never had a job which involved preparing payroll or statistical data for worker's compensation insurers. Additionally, Edward Fisher did not oversee the work of the Demex clerical staff in putting together payroll types of information. He had no background or training which would enable him to effectively oversee that work.

Regardless of the accuracy of the foregoing assertions, the primary issue before the Court is whether the terms and provisions of the applicable collective bargaining agreements and Trust Agreements provide for the personal liability of Edward Fisher and, if so, whether the Plaintiffs have proven by a preponderance of the evidence that the conditions within those agreements have been met so as to impose personal liability on Fisher.

The Defendants allege it was a coincidence when Edward Fisher signed contribution reports which were submitted to the Plaintiffs. Edward Fisher was in the office, the report had been paid and it needed to be signed so that it could be mailed. Because the reports were prepared by those individuals who did the payroll, Edward Fisher assumed they were accurate. He had no roll in preparing or gathering the information needed to prepare the reports. Regardless of the circumstances under which Edward Fisher signed the forms, the issue before the Court is whether Fisher signed the forms that were submitted to the Plaintiffs, which satisfies one of the criteria for imposing personal liability pursuant to the Trust Agreements.

### (B)

On January 26, 2005 Edward Fisher, as President of Demex, printed his name to a Memorandum of Agreement with the Great Plains Laborers District Council. Section 4 of that agreement provides in pertinent part as follows:

Where an audit discloses a difference between the hours actually worked by an employee and hours reported to the Fringe Benefit Funds by the EMPLOYER and where such audit discloses a willful violation of any of the requirements of the Trust Agreements, the officers and directors of the EMPLOYER if a corporation, or the owner or partners of the EMPLOYER, as applicable, shall be personally liable for any underpayment or other pecuniary loss to the Fringe Benefit Fund as a result of such conduct.

Although the Defendants allege that Edward Fisher did not understand what Section 4 in the Memorandum of Agreement

with the Great Plains Laborers District Council meant, Edward Fisher testified he did not read Section 4 before signing the document.

On September 26, 2005 William Fisher, a Vice President of Demex, signed a document entitled "Agreement negotiated by and between The Southern Illinois Builders Association et al and Southern and Central Laborers' District Council Covering Building Construction in Highway District 7 and 9." Highway District 7 includes the jurisdiction of Laborers' Local 1197 and Highway District 9 includes the jurisdiction of Laborers' Local 773.

On December 12, 2005, Demex signed a project only agreement for Highway District 6 with Laborers' Local Union 477 relating to the Lincoln Developmental Center Project. Edward Fisher signed the project only agreement on behalf of Demex.

On August 28, 2006 Billie G. Moore, identified as a Vice President of Demex, signed a participation agreement with Laborers' Local Union 159. It was a project only agreement concerning the Park 101 Project in Decatur, Illinois. The Defendants allege Edward Fisher understood that Demex was required to submit contributions on that project for all union cardholders. The Plaintiffs note it is immaterial as to Edward Fisher's understanding regarding his obligations to pay fringe benefits for nonunion employees. Moreover, Edward Fisher's alleged understanding does not comport with existing law.

On February 21, 2007 Billie G. Moore, identified as the Secretary of Demex, signed a document referred to as a Participation Agreement with Laborers' Local 165.

On March 7, 2007 Billie G. Moore, as an officer of Demex, signed a document entitled "Articles of Agreement Covering Building Construction Within the Jurisdiction of Local Union No. 165."

On August 2, 2007 Edward Fisher, in his capacity as President of Demex, signed a Participation Agreement with Laborers' Local 393.

On August 8, 2007 Edward Fisher, in his capacity as President of Demex, signed a Memorandum of Agreement with Great Plains Laborers' District Council. The substance of that agreement is identical to the Memorandum of Agreement with Great Plains Laborers' District Council, which is referred to above.

The Central Laborers' monthly report form contains a preprinted paragraph immediately above the report signature line which reads as follows:

We hereby certify that this report includes all hours worked by employees in our employment within the territorial and occupational jurisdiction of the Central Laborers' Funds for the month shown above and further, that the Employer whose name and entity is set forth below, subscribes to and agrees to be bound by and confirms and adopts all of the provisions and terms of the Agreement and Declaration of Trust establishing the Central Laborers' Welfare Fund dated March 30, 1966, and the Agreement and Declaration of Trust establishing the Central Laborers' Pension Fund dated January 1, 1965 and all amendments, revisions, additions, and deletions thereto as to both Trust Agreements, and accepts all of them as fully as though the same were herein contained and further agrees to accept as a personal obligation for himself and on behalf of his firm to oversee the payment of the established rates of contributions to the aforesaid Funds; provided, however, that the aforesaid obligations shall be inoperative with respect to any Employer who has a written agreement with the local unions representing such Employer's employees,

which agreement specifically provides for the coverage of such employees by another pension or welfare benefit plan in lieu of the plan created by the above-referenced Agreements and Declarations of Trusts establishing the Central Laborers' Pension and Welfare Funds.

Article VI, Section 3 of the Restated Trust Agreement of the Central Laborers' Funds [Trust Agreement] states as follows:

Where an audit discloses a difference between the hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any of the requirements of this Trust Agreement or rules and regulations adopted in connection herewith, those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct. Nothing herein shall prevent personal liability for owners or partners who are not otherwise incorporated.

### (C)

Edward Fisher testified he never prepared a fringe benefit contribution form. Moreover, the Defendants allege Edward Fisher had no knowledge of what was owed to the Central Laborers' Fund on a monthly basis. As president, however, Edward Fisher was responsible for the financial decisions of the company including the payment of fringe benefit contributions. He had final authority over what bills were paid. Moreover, Edward Fisher reviewed monthly expenses and would approve payment of the monthly expenses.

The Defendants allege it was Edward Fisher's understanding that under the terms of the agreements signed with the Laborers' Union, Demex was obliged to make fringe benefit contributions for individuals holding union cards that did laborers' work. If an individual did not hold a laborers card, it was Edward Fisher's understanding that Demex was not required under the agreements to make fringe benefit contributions for that individual. However, Edward Fisher's understanding of his obligations to pay fringe benefits for non union employees is immaterial if he is obligated under the law based on the documents he signed. The Plaintiffs assert Edward Fisher's understanding is contrary to existing law.

On December 21, 2007, the auditors of the Central Laborers' Funds issued a revised audit report of Demex payroll records for the time period between January 1, 2005 and September 30, 2005, which claims that contributions, audit costs, and liquidated damages are due and owing of $41,964.54. In April of 2009, Romalo and Associates submitted its audit report to the Central Laborers' Funds of the payroll records of Demex covering the time period between October 1, 2005 and December 31, 2008, which claims that contributions, audit costs and liquidated damages are due and owing of $341,952.56.

At various times during the period covered by the payroll examinations referred to above, Demex has submitted to the Plaintiffs contribution reports and made monetary contributions with those reports. The Plaintiffs have made demands on Demex to pay the contributions owed under the agreements and pursuant to the payroll examinations. The Defendant has not paid the Plaintiffs for the contributions, audit costs and liquidated damages claimed to be owing to the Plaintiffs.

The Defendants contend there is no documentation in either report as to whether the auditors concluded Demex had en-

gaged in any willful violation of any term of the Trust Agreement. However, it is not the role of the auditors to make a legal conclusion like that.

### III. LEGAL DISCUSSION

■ In this action pursuant to § 1145 of ERISA, 29 U.S.C. § 1145, the Plaintiffs already have a Judgment against Demex in the amount of $330,816.31. They now to seek to obtain judgment against Edward Fisher and impose personal liability for the amount.

#### (A)

■ As a general rule, Congress did not intend for § 1145 of ERISA to impose personal liability on corporate officers. *See Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir.1996). "[T]he general rule is only upset where individuals contractually accept responsibly for corporate liability, thus becoming 'employers obligated to make contributions' under Section 1145." *Id.* There may be other exceptions under federal or state law if, for example, the individual is the corporation or its alter ego or committed fraud or breached a fiduciary duty. *See id.*

Although the Seventh Circuit has not addressed the issue, other courts have held that personal liability may be imposed pursuant to the policies underlying ERISA or under state contract law. The Second Circuit has determined that under state contract law, personal liability may be imposed under § 1145 of ERISA. *See Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 35 F.3d 29, 37 (2d Cir.1994). Additionally, the Ninth Circuit has held that the underlying policies of ERISA require a strict interpretation of labor agreements and, based on this standard, individuals can be held liable if the terms of the agreement require such a result. *See Employee Painters Trust v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir.1996).

Federal district courts within the Seventh Circuit have also held that personal liability can be imposed based on language found in the labor agreements, trust agreements and contribution report forms. *Central Laborers' Pension, Welfare and Annuity Funds v. Icon Const. Services, Inc.*, 2010 WL 5421156, at *2 (S.D.Ill.2010); *Central Laborers' Pension, Welfare and Annutity v. River Bend Contractors, Inc.*, 2007 WL 2156663, at *3 (S.D.Ill.2007).

Illinois contract law also provides that an individual can be held personally liable for a contract either expressly or by inference fairly drawn from all the facts and circumstances in evidence. *See Central States, Southeast and Southwest Areas, Health and Welfare Fund v. Pitman*, 66 Ill.App.3d 300, 302, 23 Ill.Dec. 26, 383 N.E.2d 793 (3d Dist.1978).

Finally, the applicable labor agreements and trust agreements require that, subsequent to the completion of the audit, which shows under-reporting of hours worked, personal liability of an officer may be imposed if the officer willfully violated the requirements of the trust agreements.

Upon reviewing the applicable language, the Court concludes that the agreements do impose personal liability on Edward Fisher. The Memorandum of Understanding executed on January 26, 2005 by Edward Fisher, as President of Demex, covered an area that included the jurisdictions of eighteen local unions in the central part of Illinois and, in the agreement, Demex adopted all collective bargaining agreements between the Great Plains District Council and fourteen contractor associations. Demex agreed to pay the amounts identified in the collective bargaining agreements to the Plaintiffs and to be bound by the terms and agreements of the Trust Agreements.

This Agreement was for the period of January 26, 2005 through April of 2008. On August 8, 2007, Edward Fisher and the Great Plains District Council executed a second Agreement which included the same language as the First Agreement. Both Agreements specified that officers and directors of a corporation would be personally liable for the under-reporting of contributions owed.

In addition to the language of the Agreements, Edward Fisher signed contribution report forms that imposed personal liability. The language stated that the signer accepted "a personal obligation for himself and on behalf of his firm to oversee the payment of the established rates of contributions to the aforesaid Funds."

Consistent with the reasoning in *Sullivan*, there is no question that Edward Fisher accepted personal responsibility and thus was required to make contributions pursuant to § 1145. In this case, the contract specifically required the party signing-Edward Fisher, as President-to guarantee payment. Upon reviewing the totality of the circumstances surrounding the transactions relating to Edward Fisher, the Court concludes that Fisher agreed unambiguously to be personally liable for contributions that were under-reported. The 2005 Memorandum of Agreement and the August of 2007 Agreement with the Great Plains District Council include identical language as to personal liability. Edward Fisher agreed to be personally liable by executing the second Agreement more than two years after signing the first Agreement.

The Memorandum of Agreements incorporated the relevant Trust Agreements. Additionally, Edward Fisher signed report forms on behalf of Demex. As the Southern District of Illinois held in *Icon*, wherein Judge Herndon determined that the individual defendant was personally liable based on the labor agreement, trust agreement and report forms, this Court finds that Edward Fisher is personally liable due to his signature on the Memorandum of Agreements, the incorporation by those Agreements of the Trust Agreements and his signature on report forms. This result is consistent with the Second Circuit's reasoning in *Lollo*, wherein that court held that the corporate officer had agreed to make contributions that were under-reported and therefore, he was personally liable. *See Lollo*, 35 F.3d at 37.

To the extent that Defendants contend that Edward Fisher only signed a few contribution report forms and personal liability thus should not attach, the Court rejects that argument. Based on the language of the Memorandum of Agreements, Trust Agreements and the report forms signed by Edward Fisher, the Court concludes that Edward Fisher is personally liable for the delinquent contributions of Demex.

### (B)

The audit shows a difference between the hours actually worked and hours reported to the Funds. An audit that Plaintiffs performed for the period of January of 2005 through September of 2005 showed delinquent contributions in the amount of $42,437.29. The Plaintiffs conducted a second audit for the period of October 1, 2005 through December 31, 2008. The report issued on April 7, 2009 showed delinquent contributions of $307,402.33. Following challenges by Demex, the amounts were reduced from $42,437.29 to $41,382.75 and $307,402.33 to $250,645.73. Thereafter, Demex stipulated to the entry of judgment for the amounts which, along with attorney's fees of $38,787.83, total $330,816.31.

The Court further finds that the under-reporting of contributions, as noted in the two audit reports, represented a willful violation of the Trust Agreements. At the

time of the stipulated judgment, Edward Fisher was the sole officer and decision-maker for Demex. Accordingly, the stipulated judgment serves as a judicial admission.

Additionally, the Court finds that Edward Fisher, individually, willfully violated the requirements of the Trust Agreements. To the extent that Defendants argue that the auditors' reports must find that the under reporting of employee hours was willful, the Court rejects that assertion. The Defendants cite no authority for such a proposition.

In other contexts, the Seventh Circuit has defined willful conduct as "intentional, knowing and voluntary acts." *See Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir.1970) (determining whether to impose personal liability for failure to pay social security and income taxes withheld from employees). Willful conduct may include a "reckless disregard for obvious or known risks." *Id.* It may also include a "failure to investigate or correct mismanagement after receiving notice" that payment was not made. *See Stevenson v. United States,* 1995 WL 302459, at *4 (N.D.Ill.1995) (determining whether the withholding of taxes owed to the government constituted willfulness).

As President of Demex, Edward Fisher had authority to determine which bills and expenses of the corporation would or would not be paid. Edward Fisher reviewed monthly revenues and expenses and he approved the payment of monthly expenses. Mr. Fisher had check signing authority on the corporate bank accounts. He had the authority to hire and fire personnel. Based on the income tax records and retained earnings, moreover, there is no evidence that Demex lacked the funds to pay the fringe benefit contributions. Although Edward Fisher became aware of the problems with delinquent contributions after the audit report was issued in De-cember of 2005, the results of the second audit report show that he failed to correct the problems noted in the first audit report. The second audit report showed delinquent contributions of $307,402.33.

Although the Defendants allege that any violations of the Trust Agreements by Edward Fisher or his employees can be attributed to negligence, ignorance or inexperience, the Court disagrees. At the very least, Edward Fisher demonstrated a reckless disregard for the law—whether failing to read certain provisions or continuing to under-report employee hours as shown by the second audit report after he knew of the delinquencies referenced in the first audit report.

Applying the relevant factors, the Court finds that Edward Fisher knew of the failure to pay and intentionally and voluntarily failed to correct the problem. Based on existing case law, state contract law and policy considerations underlying ERISA and pursuant to the audit liabilities and his willful violations of the labor agreements and Trust Agreements, the Court concludes that Defendant Edward Fisher is personally liable for delinquent contributions owed by Defendant Demex.

*Ergo,* the Clerk will enter Judgment in favor of the Plaintiffs and against Defendant Edward Fisher, personally.

Judgment in the amount of $330,816.31 is entered against Defendant Edward Fisher, individually, for the contributions, penalties, interest, and attorney's fees previously awarded to the Plaintiffs and against Defendant Demex Group, Inc., in addition to any fees that have accrued since the entry of the previous Judgment.

Judgment was previously entered against Defendant Demex Group, Inc. Upon entry of Judgment against Edward

Fisher, therefore, the Clerk shall terminate the case.