INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS UNION NO. 63, Plaintiff–Counter Defendant,

v.

GLAZIERS, ARCHITECTURAL METAL AND GLASS WORKERS LOCAL UNION NO. 27, CHICAGO AND VICINITY, OF THE UNITED BROTHERHOOD OF PAINTERS AND ALLIED TRADES, Defendant–Counter Plaintiff,

and

Joint Conference Board Of The Chicago and Cook County Building and Construction Trades Council, Third–Party Defendant.

No. 97 C 7347.

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1999.

998

Collins Parkin Whitfield, Terrance Bryan McGann, Daniel Paul McAnally,

Frank A. Marco, Mary Elizabeth Halloran, Ayanna Cori Walters, Travis J. Ketterman, Jeffrey Marc Kropp, Whitfield & Gregorio, Chicago, IL, for Plaintiff.

Hugh B. Arnold, John Joseph Toomey, Arnold & Kadjan, Chicago, IL, for Defendant Local 27 Glaziers.

Patrick Edward Deady, Edward M. Hogan, Hogan, Marren & McCahill, Ltd., Chicago, IL, for Third-Party Defendant Chicago and Cook County Bldng. and Const.

## *MEMORANDUM OPINION AND ORDER*

ANN CLAIRE WILLIAMS, District Judge.

Local Union 63 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Iron Workers") brings this lawsuit under Section 301 of the National Labor Relations Act, 29 U.S.C. § 185 against Glaziers, Architectural Metal and Glass Workers Local Union 27 of the United Brotherhood of Painters and Allied Trades ("Glaziers"). In its two-count complaint, Iron Workers alleges that Glaziers breached a contract between the two unions by bidding for and obtaining two jobs that Iron Workers should have received. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, both parties move for summary judgment on Iron Workers' claims. Additionally, Glaziers moves for summary judgment on its counterclaim. For the following reasons, the court (1) denies Iron Workers' motion for summary judgment; (2) grants in part and denies in part Glaziers' cross-motion for summary judgment; and (3) denies Glaziers' motion for summary judgment on its counterclaim without prejudice.

### *Background*

Iron Workers and Glaziers are both labor unions that organize employees for the purpose of hanging and installing glass, windows, and doors. On July 1, 1985, Iron Workers and Glaziers executed a contract[1]

---

1. The parties refer to the contract as the "Tentative Agreement" because that is the term the contract uses in its preamble. Un-

"for the purpose of improving relations between the two trades, facilitating the settlement of jurisdictional disputes directly between the two trades and establishing an understanding that will mutually assist each Union to secure and to perform work coming within its jurisdiction." (Contract ¶ 1.) In other words, Iron Workers and Glaziers are two separate labor unions, but they organize employees to perform very similar types of work. The two unions therefore executed this contract to prevent disputes as to which union would be entitled to perform specific jobs in a designated geographic area.

For example, the first five sections of the contract allocate specific jobs among Iron Workers and Glaziers as follows:

### SECTION I

Store fronts are the work of the craft receiving the erection assignment. Store fronts consist of sills, side jambs, head jambs, glass retaining settings, vertical and horizontal tubular mullions and mutins and bars of all shapes. All other types including reinforced material are the work of the Iron Workers. Installation of glass is the work of the Glaziers. All metal and glass on the ground floor only can be done by composite crews of Glaziers and Iron Workers.

### SECTION II

Entrances with tubular doors in openings is the work of the craft receiving the erection assignment. The installation of tempered glass doors is the work of the Glaziers. The installation of revolving doors is the work of the Iron Workers.

### SECTION III

The Installation of all pre-fabricated, pre-glazed, pre-hung windows of any type is the work of the Iron Workers.

### SECTION IV

This section is confined to the installation of metal curtain-wall construction of all types. Metal curtain-wall is the work of the Iron Workers in its entirety.

### SECTION V

This section is confined to the installation and sealing of panels used in connection with curtain-wall construction.

 (a) The installation of metal panels is the work of the Iron Workers. The application of patented sealants, when used to seal metal to metal surfaces, is the work of the Iron Workers.

 (b) The installation of raw glass panels is the work of the Glaziers. The application of patented sealants, when used to seal raw glass to metal surfaces, and sealing if glass to glass is the work of the Glaziers, except where the glass is used as a component of a railing.

(Contract §§ 1–5.)

In the event that Iron Workers and Glaziers disagreed over which union was entitled to perform a specific job, Section XI of the contract states that:

If a dispute should arise over the interpretation or application of this agreement, the two business agents of the respective unions shall make a conscientious endeavor to settle the dispute locally. Should the business agents fail to consummate a satisfactory understanding, the two heads of the respective locals will review the work in question. If they cannot agree, they shall immediately go to the Chicago Joint Board for jurisdictional hearings.

There shall be no stoppage of work while the dispute is in process of settlement.

(Contract § XI.)

After Iron Workers and Glaziers executed the contract in 1985, they performed on

like Glaziers, this court attributes no significance to the use of the word "tentative." For purposes of this Opinion, the court will refer to the "Tentative Agreement" as the "contract," or the "agreement."

the contract for about twelve years. Over this time, numerous disputes arose over which union had jurisdiction to perform specific jobs. In accordance with Section XI of the contract, Iron Workers and Glaziers resolved these disagreements by having their business agents or union heads discuss the matters and reach mutually acceptable agreements.

Throughout 1996, Iron Workers and Glaziers considered changing the contract. Representatives from both unions met on several occasions and discussed proposed changes to the contract, but the parties never agreed on the suggested changes. In 1997, after twelve years of relatively peaceful coexistence under their jurisdiction-defining contract, things began to get ugly between Iron Workers and Glaziers. In April 1997, Iron Workers and Glaziers disagreed over which union was entitled to perform work at Thomas Middle School in Arlington Heights, Illinois. In accordance with Section XI of the contract, Glaziers sent a letter to the Chicago Joint Conference Board ("JCB") seeking a resolution of this conflict. Ultimately, Iron Workers withdrew its claim to the project, so the JCB did not hold a hearing on this dispute.

In June and July of 1997, another dispute arose between Iron Workers and Glaziers. This dispute concerned a construction project at the Blue Cross/Blue Shield Insurance building in Chicago, Illinois. Consistent with Section XI of the contract, Glaziers again asked the JCB to determine whether Iron Workers or Glaziers was entitled to the job.[2] On July 31, 1997, however, Glaziers formally withdrew its request for a JCB hearing on the Blue Cross project because the work had already been 95% completed.

In addition to the Thomas Middle School and Blue Cross disputes, Iron Workers and Glaziers also disagreed over which union had the right to perform work at two other job sites. These two disputes form the basis for this lawsuit. The first dispute concerned work at a Hampton Inn & Suites Hotel construction project in Chicago, Illinois ("Hampton Inn project"). On December 6, 1996, E.J. Hayes Glass and Mirror Company ("E.J.Hayes") received a contract from Ben A. Borenstein & Co. ("BABCO") under which E.J. Hayes agreed to install pre-glazed windows at the Hampton Inn project. E.J. Hayes had a collective bargaining agreement ("CBA") with Glaziers, but did not have a CBA with Iron Workers.

After Iron Workers learned about the Hampton Inn project, one of Iron Workers' business representatives, George Christos ("Christos"), contacted a project manager for E.J. Hayes. The project manager confirmed that E.J. Hayes received the Hampton Inn contract and that the work included the installation of pre-glazed windows. E.J. Hayes' project manager also told Christos that E.J. Hayes planned to assign the job of installing the pre-glazed windows to Glaziers.

According to Iron Workers, in early April 1997, Christos contacted Glaziers' president, Leonard Matthies ("Matthies"), about the Hampton Inn project. Christos claims that he and Matthies discussed the work to be done at the Hampton Inn project and that Matthies suggested that the parties wait to address the issue until the work actually began. In stark contrast to Christos's version of these events, Matthies claims to have "no recollection" of this April 1997 conversation. (Matthies Aff. ¶ 7.) According to Matthies, he never discussed the Hampton Inn project with Christos until late August or early September 1997.

Eventually, Glaziers' members began to install pre-glazed windows at the Hampton Inn project and performed this work to its

---

**2.** Glaziers denies that it acted in accordance with the contract when it sought JCB intervention. (*See* Glaziers' 12(N)(3)(a) Resp. to Iron Workers Stmt. of Undisputed Facts at ¶ 14.) Glaziers' conclusory denial fails to comply with Local Rule 12(N)(3)(a) because Glaziers does not cite any evidence to support its denial. The court therefore admits Iron Workers' facts over Glaziers' denial.

completion. The parties dispute precisely when Glaziers began its work at the Hampton Inn project. Iron Workers contends that Glaziers began work in early July 1997. Glaziers, on the other hand, says that its work at the Hampton Inn project did not begin until August 25, 1997.

The second job dispute concerns work at the Sears Tower in Chicago, Illinois ("Sears Tower project"). At the Sears Tower project, a company called Masonry Arts, Inc. ("Masonry Arts") contracted with Tower Leasing Inc. for Masonry Arts to perform work at the Sears Tower. The parties dispute the exact nature of the work that Masonry Arts agreed to perform. Iron Workers claims that Tower Leasing hired Masonry Arts to "install and retrofit pre-glazed windows" at the Sears Tower. In contrast, Glaziers maintains that the Sears Tower work was "reglazing."

Masonry Arts eventually assigned the work at the Sears Tower project to Glaziers. The parties, however, dispute how Glaziers obtained the work at the Sears Tower project. Iron Workers asserts that Glaziers "fought for the work assignment" and "forc[ed] the work to be assigned to its members." (Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. at 7–8.) Iron Workers bases this claim on the fact Glaziers' parent organization, the International Brotherhood of Painters and Allied Trades ("IBPAT"), executed a CBA with Masonry Arts on February 11, 1997. Iron Workers therefore contends that since Glaziers knew that Masonry Arts received the contract at Sears Tower, that Glaziers must have tried to get the work through its parent organization, IBPAT.

Not surprisingly, Glaziers paints a very different picture of how it obtained the work at the Sears Tower project. Glaziers contends that it did not seek out or request the Sears Tower project. Rather, Glaziers says that "Masonry Arts first hired two members of Glaziers 27 pursuant the terms of the IBPAT National agreement." (Def.'s 12(N)(3)(a) Resp. to Iron Workers' Stmt. of Undisputed Facts ¶ 31.)

According to Glaziers, it received the work assignment from IBPAT, which had executed a CBA with Masonry Arts on February 11, 1997. Glaziers insists that since IBPAT had a CBA with Masonry Arts, and Iron Workers did not, that Masonry Arts contacted IBPAT to get workers for the project. IBPAT then contacted its local in the area, which just happened to be Glaziers, and assigned the job to Glaziers under IBPAT's CBA with Masonry Arts.

The parties also disagree over when Glaziers started its work at the Sears Tower project. Iron Workers maintains that Glaziers' workers were installing pre-glazed windows at the Sears Tower project as early as April 1997. In contrast, Glaziers claims that "Masonry Arts first hired two members of Glaziers 27 pursuant to the terms of the IBPAT National Agreement on June 26, 1997." (Def.'s 12(N)(3)(a) Resp. to Iron Workers' Stmt. of Undisputed Facts ¶ 31.) Glaziers further contends that no "windows were changed until after July 1, 1997 at the earliest." (*Id.*) At any rate, Glaziers got the work and Iron Workers has not performed any work at the Sears Tower project.

On July 3, 1997, Glaziers sent Iron Workers a letter "abrogating and terminating the tentative Agreement effective immediately." The next month, on August 27, 1997, apparently intending to conform with Section XI of the now-terminated contract, Iron Workers filed a jurisdictional dispute before the JCB regarding the Sears Tower project. A few days later, Iron Workers submitted another request to the JCB for a jurisdictional hearing over the Hampton Inn project. The JCB scheduled and held a hearing regarding the Hampton Inn and Sears Tower projects on September 17, 1997, but Glaziers did not attend the hearing. The JCB decided that both the Hampton Inn and Sears Towers projects should have been assigned to Iron Workers rather than Glaziers. Notwithstanding the JCB's order, Glaziers did not comply with the JCB's

decision. The JCB therefore ordered a special meeting for October 13, 1997 to ascertain why Glaziers was not complying with its decision. Glaziers did not appear at this special meeting, either. The JCB found that Glaziers was bound by its decision, and that both projects belonged to Iron Workers.

In addition to the JCB proceedings, there was also a related hearing before the National Labor Relations Board ("NLRB"). Specifically, on September 25, 1997, E.J. Hayes filed a section 10(k) proceeding against Glaziers, alleging that Glaziers violated section 8(b)(4)(ii)(D) of the National Labor Relations Act ("NLRA"). E.J. Hayes asserted that Glaziers violated the NLRA by attempting to force E.J. Hayes to assign the work at the Hampton Inn project to Glaziers rather than Iron Workers. *See Glaziers, Local No. 27*, 325 N.L.R.B. 122 (1998).

The NLRB decided that Glaziers did not violate the NLRA. In contrast the JCB's decision, the NLRB held that Glaziers was entitled to perform the work at the Hampton Inn project. The NLRB reached this decision because: (1) Glaziers had a CBA with E.J. Hayes, while Iron Workers did not; (2) E.J. Hayes has assigned similar work to Glaziers in the past; (3) Glaziers has performed similar work in the Chicago area on at least 10 other projects; (4) Glaziers' workers possessed the requisite skills to perform the disputed work; (5) it was more economical to award the work to Glaziers; and (6) the NLRB disregarded the conflicting JCB order awarding the work to Iron Workers because E.J. Hayes was not a party to the contract between Glaziers and Iron Workers, and E.J. Hayes therefore never agreed to be bound by a JCB decision. Based on these factors, the NLRB held that E.J. Hayes properly awarded the work to Glaziers rather than Iron Workers.

Iron Workers brought this two-count lawsuit against Glaziers for breach of contract. In Count I, Iron Workers asserts two claims arising out of the Sears Tower project. Specifically, Iron Workers alleges

that Glaziers breached Section III of the contract by persisting "in their attempts to secure the [Sears Tower] work and to deprive the Iron Workers of their lawful and contractual right to the work." (Compl., Count I, ¶ 12.) Iron Workers also alleges in Count I that Glaziers breached Section XI of the agreement by refusing "to submit to or abide by a determination of the Joint Conference Board" concerning the Sears Tower project. (Compl., Count I, ¶ 16.)

In Count II of its complaint, Iron Workers insists that Glaziers' conduct concerning the Hampton Inn project breached their jurisdiction-defining agreement. Iron Workers contends that Glaziers breached Section III of the contract by persisting "in their attempts to secure the [Hampton Inn] work and to deprive the Iron Workers of their lawful and contractual right to the work." (Compl., Count II, ¶ 12.) Iron Workers also alleges that Glaziers breached Section XI of the agreement by refusing "to submit to or abide by a determination of the Joint Conference Board" decision concerning the Hampton Inn project. (Compl., Count II, ¶ 16.)

In response to Iron Workers' complaint, Glaziers filed a counterclaim under the Federal Arbitration Act, 9 U.S.C. § 10. Essentially, Glaziers requests the court to vacate the JCB award against it because Glaziers argues that the JCB had no jurisdiction to enter the award against it. Glaziers asks the court to nullify the JCB's ruling that Glaziers must abandon and turn over the work at the Hampton Inn and Sears Tower projects. Glaziers also seeks to have this court vacate the JCB's imposition of two $5,000 fines against Glaziers for failure to abide by the JCB's orders.

Both parties have now filed motions for summary judgment. Iron Workers seeks summary judgment on both counts of its complaint. In response to Iron Workers' motion for summary judgment, Glaziers filed a cross-motion for summary judgment insisting that it is entitled to judg-

ment as a matter of law on both of Iron Workers' claims. Glaziers also moves for summary judgment on its counterclaim.

### Analysis

The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court will not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton*, 77 F.3d at 171 (citation omitted); *Sullivan*, 78 F.3d at 325 (citation omitted).

### I. *Iron Workers' Motion for Summary Judgment*

Iron Workers first seeks summary judgment on Count I of its complaint, arguing that there is no genuine issue of material fact that Glaziers' conduct surrounding the Sears Tower project breached the contract. Specifically, Iron Workers alleges that Glaziers breached Section III of the contract by persisting "in their attempts to secure the [Sears Tower] work and to deprive the Iron Workers of their lawful and contractual right to the work." (Compl., Count I, ¶ 12.) Iron Workers also alleges in Count I that Glaziers breached Section XI of the agreement by refusing "to submit to or abide by a determination of the Joint Conference Board" concerning the Sears Tower project. (Compl., Count I, ¶ 16 .)

■ Rather than simply addressing Iron Workers' claim head-on, Glaziers first raises two very weak procedural arguments. Glaziers initially contends that the court must dismiss this entire lawsuit for failure to join E.J. Hayes, Masonry Arts,

and the IBPAT as necessary parties under Rule 19 of the Federal Rules of Civil Procedure. The court rejects this argument. Even if E.J. Hayes, Masonry Arts, and the IBPAT are "necessary parties" under Rule 19, dismissing the case is not the appropriate remedy. Rather, the appropriate way to cure this problem is to add them as parties. *See* Fed.R.Civ.P. 19(a). If Glaziers really wants to drag E.J. Hayes, Masonry Arts, and the IBPAT into this lawsuit, then it may do so by appropriate motion. In the meantime, however, their absence does not constitute a justifiable basis upon which to dismiss this entire action.

■ In its second procedural argument, Glaziers asserts that the court should dismiss the lawsuit because Iron Workers seeks relief that would be inconsistent with the NLRB's decision. In support of this argument, Glaziers properly notes that the NLRB's decision takes precedence over the JCB's decision. However, Glaziers ignores several critical facts that render this argument groundless. Chief among the facts Glaziers overlooks is Iron Workers' request for relief. As Iron Workers points out, Iron Workers "*seeks a monetary award of damages, not an assignment of work which conflicts with the Labor Board's April 1998 decision.*" (Pl.'s Mem. in Opp. to Def.'s Cross–Motion for Summ. J. at 7) (emphasis in original). Thus, contrary to Glaziers' assertion, an adverse judgment in this case will not conflict with the NLRB's decision.

Now, moving to the merits of Count I, to prevail on its motion for summary judgment, Iron Workers must show that there is no factual dispute that: (1) Iron Workers and Glaziers had a valid and enforceable contract; (2) Iron Workers performed its obligations under the contract; (3) Glaziers breached its contractual obligations; and (4) Iron Workers sustained an injury as a result of Glaziers' breach. *Kastel v. Winnetka Bd. of Educ., Dist. 36*, 975 F.Supp. 1072, 1083 (N.D.Ill.1997) (citing *Berry v. Oak Park Hosp.*, 256 Ill.App.3d

11, 195 Ill.Dec. 695, 628 N.E.2d 1159, 1165 (1993)).

■ Iron Workers alleges two separate breaches of contract in Count I. Iron Workers first claims that Glaziers breached Section III of the contract by obtaining work at the Sears Tower project that belonged to Iron Workers under the agreement. Given the many factual disputes surrounding the Sears Tower project, it is relatively easy to deny Iron Workers' motion for summary judgment on this issue.

As the court explained, the parties dispute the nature of the work that Masonry Arts agreed to perform at the Sears Tower project. Iron Workers claims that Masonry Arts agreed to "install and retrofit pre-glazed windows" at the Sears Tower. If undisputed, this argument might establish a breach of Section III. However, Glaziers provides proof that the Sears Tower work was "reglazing." According to Glaziers, "reglazing" does not fall within Iron Workers' jurisdiction under the contract. Therefore, because there is a factual dispute over the type of work Glaziers performed at the Sears Tower project, the court cannot determine whether Glaziers' work breached Section III of the contract. Since there is a genuine issue of material fact over whether Glaziers' work at the Sears Tower project constituted a breach, the court denies Iron Workers' motion for summary judgment on this issue.[3]

Additionally, other disputed facts surrounding the Sears Tower project also preclude summary judgment in Iron Workers' favor. For example, the parties dispute how Glaziers obtained the work at the Sears Tower project. Iron Workers claims that Glaziers "fought for the work assignment" and "forc[ed] the work to be assigned to its members." (Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. at 7–8.) Glaziers, however, shows facts from which a reasonable jury could find that it did not seek out or request the Sears Tower project. Specifically, Glaziers provides evidence which shows that it received the work assignment from IBPAT, which had executed a CBA with Masonry Arts on February 11, 1997. Accepting these facts as true, a reasonable juror could find that Glaziers did not, as Iron Workers contends, actively try to obtain the Sears Tower project and prevent Iron Workers from getting the job. Additionally, Iron Workers did not even have a CBA with Masonry Arts. The court therefore denies Iron Workers' motion for summary judgment on its claim that Glaziers breached Section III of the agreement when it performed work at the Sears Tower.

■ The second claim in Count I alleges that Glaziers breached Section XI of the agreement when it "refused to submit or abide by a determination of the Joint Conference Board." (Compl., Count I, ¶ 16.) The only mention Iron Workers makes of this claim in its motion for summary judgment is a conclusory footnote. (*See* Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. at 7 n. 1.) By failing to support this assertion with facts or authority, Iron Workers forfeits the argument. *See Ryan v. DuPage Cty. Jury Comm'n,* 105 F.3d 329, 330 (7th Cir.1996) (per curiam); *Thompson v. Boggs,* 33 F.3d 847, 856 (7th Cir.1994). In short, the court will not scour the record and attempt to decipher what Iron Workers' factual and legal arguments on this issue might be. The court therefore denies Iron Workers' motion for summary judgment on this issue.

Nevertheless, even if Iron Workers had not forfeited the point by failing make a cogent argument, the court would still deny its motion for summary judgment on this issue. There are several disputed facts concerning Glaziers' alleged refusal to submit to and abide by the JCB's determination. For example, the parties disagree over precisely when Glaziers began its work at the Sears Tower project. Iron Workers insists that Glaziers' workers

---

**3.** Glaziers also argues that the "Tentative Agreement" did not constitute a binding contract because IBPAT never ratified the contract. To put it succinctly, the court is not impressed with this argument.

were installing pre-glazed windows at the Sears Tower project as early as April 1997. In contrast, Glaziers asserts that "Masonry Arts first hired two members of Glaziers 27 pursuant to the terms of the IBPAT National Agreement on June 26, 1997." (Def.'s 12(N)(3)(a) Resp. to Iron Workers' Stmt. of Undisputed Facts ¶ 31.) Glaziers further contends that no "windows were changed until after July 1, 1997 at the earliest." (*Id.*) This dispute in timing, coupled with Glazier's July 3, 1997 termination of the contract, preclude the court from determining as a matter of law that Glaziers breached Section XI of the contract.

Iron Workers' motion for summary judgment on Count II of its complaint meets the same fate as its motion regarding Count I. In Count II, Iron Workers insists that Glaziers' conduct concerning the Hampton Inn project breached their jurisdiction-defining agreement. Iron Workers maintains that Glaziers breached Section III of the contract by persisting "in their attempts to secure the [Hampton Inn] work and to deprive the Iron Workers of their lawful and contractual right to the work." (Compl., Count II, ¶ 12.) Iron Workers also alleges that Glaziers breached Section XI of the agreement by refusing "to submit to or abide by a determination of the Joint Conference Board" decision concerning the Hampton Inn project. (Compl., Count II, ¶ 16.) However, disputed issues of fact preclude summary judgment in Iron Workers' favor on both claims.

According to Iron Workers, Christos contacted Matthies about the Hampton Inn project in April 1997. Christos claims that he and Matthies discussed the work to be done at the Hampton Inn project and that Matthies suggested that the parties wait to address the issue until the work actually began. If this were true, there would be no dispute that Glaziers knew about the Hampton Inn project and that Glaziers attempted to obtain the work to Iron Workers' exclusion.

However, in stark contrast to Christos's version of these events, Matthies claims to have "no recollection" of this April 1997 conversation. (Matthies Aff. ¶ 7.) According to Matthies, he never discussed the Hampton Inn project with Christos until late August or early September 1997. Thus, Matthies' account of the events places the first discussion between Christos and Matthies after Glaziers had terminated the contract. Since Matthies claims that no discussions took place until after Glaziers terminated the contract, there is factual dispute over whether Glaziers knew that Iron Workers disputed Glaziers' acceptance of the Hampton Inn project. This factual dispute precludes summary judgment in Iron Workers' favor.

Similarly, the parties dispute precisely when Glaziers began its work at the Hampton Inn project. Iron Workers contends that Glaziers began work in early July 1997. Glaziers, on the other hand, says that its work at the Hampton Inn project did not begin until August 25, 1997. In view of Glazier's July 3, 1997 termination of the agreement, the resolution of this factual dispute will play a critical role in determining whether Glaziers breached Section III of the contract.

The record also contains evidence upon which a reasonable jury could conclude that Glaziers' actions at the Hampton Inn project did not breach Section XI of the contract. Since there is a factual dispute concerning precisely when the parties discovered a conflict over the Hampton Inn project, and Glaziers terminated the contract on July 3, 1997, there is a factual dispute over whether Glaziers' breached Section XI of the contract. Accordingly, the court denies Iron Workers' motion for summary judgment on Count II.

## II. *Glazier's Cross–Motion for Summary Judgment*

 In its cross-motion for summary judgment on Iron Workers' breach of contract claims, Glaziers primarily attacks the damages element of Iron Workers' case.

Glaziers first asserts that Iron Workers cannot recover punitive damages in this breach of contract action. The court agrees. Generally, punitive damages may not be awarded in breach of contract actions. *See Drywall Tapers & Pointers v. Local 530*, 36 F.3d 235, 240 (2d Cir.1994). The Seventh Circuit has, however, stated that a plaintiff may recover punitive damages if there is proof of "fraud or other tortious misconduct." *Merk v. Jewel Food Stores*, 945 F.2d 889, 899 (7th Cir.1991). In this case, Iron Workers has not produced any evidence suggesting that Glaziers committed fraud or other misconduct. Accordingly, the court grants Glaziers' motion for summary judgment on Iron Workers' punitive damages claim.

■ Glaziers next seeks summary judgment on Iron Workers' claim for attorneys' fees. The Seventh Circuit has held that attorneys' fees may be available in labor cases if the losing party's arguments were "frivolous and/or vexatious." *Alberici–Eby v. Local 520*, 992 F.2d 727, 734 (7th Cir. 1993); *cf. Chrysler Motors Corp. v. Int'l Union*, 959 F.2d 685, 689–90 (7th Cir.1992) (prevailing party may collect attorneys' fees if "opponent's suit has no merit or is 'frivolous,' that is, brought in bad faith to harass rather than to win."). Applying these standards, Iron Workers has failed to show any evidence that Glaziers' position in this litigation rises to the level of frivolous, vexatious, bad faith, or harassment. Rather, the record shows that both parties have relatively well-founded factual and legal arguments. Because both parties present legitimate arguments in support of their positions, attorneys' fees will not be available to either party in this case. The court therefore grants Glaziers' motion for summary judgment on Iron Workers' claim for attorneys' fees.

■ In its next argument, Glaziers asserts that Iron Workers has waived its claim to compensatory damages by failing to present this request to the JCB. The court rejects this argument because it ignores both the purpose of the JCB proceeding and the nature of this lawsuit.

Contrary to Glaziers' assumption, the JCB did not serve as a court intended to award damages for a breach of contract. Rather, the parties agreed that the JCB would resolve jurisdictional disputes between the two unions by deciding which union should get the work. There is nothing in the record to suggest that either party ever contemplated that the JCB would determine whether the contract had been breached, and if so, award damages for the breach.

This court, on the other hand, is an appropriate forum to decide whether Glaziers breached the contract, and if so, whether compensatory damages are appropriate. Additionally, as Iron Workers points out, this lawsuit is not an attempt to confirm an arbitration award. Instead, this suit is a breach of contract case. Accordingly, Iron Workers did not waive its right to collect compensatory damages by failing to request those damages from the JCB.

■ Glaziers next asserts that the court should grant summary judgment in its favor because compensatory damages are not available under the contract. In support of this argument, Glaziers cites *Drywall Tapers and Pointers of Greater New York v. Local 530 of Operative Plasterers and Cement Masons*, 36 F.3d 235 (2d Cir. 1994). In *Drywall Tapers*, the court held that a union with a jurisdiction-defining contract with another union could not recover compensatory damages for breach of contract. *Id.* at 238. In reaching this conclusion, the court analyzed three factors: (1) whether the contract contained a provision expressly authorizing compensatory damages for breach; (2) whether awarding monetary damages was the only avenue of relief available for the non-breaching union; and (3) whether any other evidence suggested that the parties to the agreement contemplated an award of compensatory damages. *Id.* at 238–239. Applying these same factors to this case, the court finds that Iron Workers should

be entitled to recover compensatory damages.

■ Glaziers is quick to point out that, like the contract in *Drywall Tapers*, this contract does not have a provision that expressly authorizes compensatory damages. However, this contract also does not have a term that prohibits an award of compensatory damages for breach. In fact, the contract is entirely silent on the availability of compensatory damages. It is hornbook law that the usual remedy for a breach of contract is compensatory damages that put the non-breaching party in the position he would have assumed if the breaching party had performed on the contract. As the Seventh Circuit has noted in a context similar to this case, "the right to pursue contractual remedies also includes the right to ask for monetary damages, including pay in lieu of work." *Miron Constr. Co., Inc. v. Int'l Union of Eng'rs*, 44 F.3d 558, 565 (7th Cir.1995). While there is nothing in the contract to support an award of compensatory damages, there is also nothing in the contract that forecloses the availability of damages. In light of the traditional rule that breaches are remedied by compensatory damages, the contract's silence on the issue does not overcome the presumption that damages should be available.

Unlike the *Drywall Tapers* case where the non-breaching party was the beneficiary of an area-wide injunction prohibiting the competing union from obtaining disputed work, Iron Workers has no other avenue of relief. Glaziers has completed the work on both the Hampton Inn and Sears Tower projects and collected the money for that work. Glaziers then terminated the contract. Although the JCB awarded these work assignments to Iron Workers, the Iron Workers never received the work or collected any money for these projects. Accordingly, since Glaziers has already performed the disputed work and terminated the contract, the only remedy now available to Iron Workers is compensatory damages for Glaziers' alleged breach. This factor therefore favors allowing Iron Workers to pursue its claim for damages.

Finally, the third factor also favors permitting an action for compensatory damages. In *Drywall Tapers*, the court reviewed substantial evidence which clearly showed that the parties to the jurisdiction-defining agreement never intended that a non-breaching party be allowed to recover money damages. *See Drywall Tapers*, 36 F.3d at 239. This case contains no such evidence. Rather, the contract is silent on the issue and Glaziers has failed to provide any proof that these parties never intended that compensatory damages be an available remedy for a breach. Glaziers, however, argues that the record does contain evidence that neither party ever intended a damages remedy for a breach. Specifically, Glaziers points to the JCB's liquidated damages procedure in support of this argument. While the JCB's standard agreement does have such a procedure, nothing in the parties' contract makes the JCB's procedures the only remedy for a breach. Instead, as noted, the contract is completely silent as to what remedies will be available for a breach of the agreement.

In sum, considering the factors applied in *Drywall Tapers*, the court concludes that compensatory damages are available in this case. Although the contract does not indicate whether the parties contemplated money damages as a remedy, contract law does generally provide such damages. Glaziers has failed to present the court with any important policy or factual considerations that warrant a departure from this general rule. Additionally, if the court does not allow Iron Workers to pursue its damages claim, then Iron Workers will be without a remedy and its contract will have been rendered completely meaningless. As the court explained, Glaziers completed the disputed work and got paid for that work. Glaziers also terminated the contract. Although the JCB held that Iron Workers should have gotten the work at the Hampton Inn and Sears Tower projects, the NLRB reached the opposite con-

clusion and Glaziers completed the disputed work at both projects. If Iron Workers cannot now pursue compensatory damages for Glaziers alleged breach, then Iron Workers' contract will have had no effect for them. In sum, considerations of fundamental fairness dictate that Iron Workers be permitted to obtain some remedy for Glaziers' alleged breach. *See Local 1547, Int'l Bhd. of Elec. Workers v. Local 959, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers*, 507 F.2d 872, 878 (9th Cir.1974).

Glaziers next contends that Iron Workers' breach of contract case fails because Iron Workers does not present any evidence that it would have obtained the work at the Hampton Inn and Sears Tower projects. In large part, the court agrees with this argument and expresses grave concern over Iron Workers' failure to provide any proof that it would have secured the work at the Hampton Inn and Sears Tower projects. Afterall, as Glaziers emphasizes and Iron Workers admits, Iron Workers did not have a CBA with either Masonry Arts or E.J. Hayes. In the absence of a CBA with either of these employers, Iron Workers will shoulder an extremely heavy burden trying to prove that it lost income as a consequence of Glaziers' alleged breach. In light of these glaring facts, it seems that Iron Workers' damages are completely speculative and entirely unprovable.[4]

However, while the court finds this lack of evidence to be a huge (and almost fatal) flaw in Iron Workers' case, this argument affects the *amount* of damages rather than the *availability* of damages. Iron Workers' damages theory is not limited to its lost income from these two projects. Rather, Iron Workers also provides evidence that it sustained damages because, through its compliance with the contract because it ceded projects to Glaziers that

Iron Workers otherwise would have bid on and possibly obtained. Additionally, Iron Workers claims damages as a result of its compliance with Section XI of the contract during which Iron Workers appeared before the JCB. These damages, although most likely minimal in value, survive Glaziers' attack on Iron Workers' obvious lack of evidence to support its theory that it would have obtained the work at the Hampton Inn and Sears Tower projects.

Finally, Glaziers contends that summary judgment is appropriate because enforcing the contract will "command conduct which is violative of federal labor law and which, thus, is 'inherently contrary to public policy.'" (Def.'s Mem. in Supp. of Mot. for Summ. J. at 14) (quoting *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 79, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). The court is not persuaded by this argument.

Initially, the court agrees with Glaziers' premise that "the analysis of [this issue] ... must focus upon the conduct Glaziers could undertake to comply with the tentative agreement." (Def.'s Mem. in Supp. of Mot. for Summ. J. at 15.) The court, however, finds Glaziers' factual analysis incorrect. According to Glaziers, the only way it could have complied with the contract would have been to order its employees to cease working at the Hampton Inn and Sear Tower projects, thus violating federal law.

Glaziers could have easily complied with its contractual promise simply by recognizing Iron Workers' claimed rights to the work at the Hampton Inn and Sears Tower projects and resolving those claims when Iron Workers asserted them. Apparently, however, Glaziers did not react to Iron Workers' claims in this amicable manner. Instead, the facts suggest that Glaziers may have simply ignored Iron

---

**4.** Assuming Iron Workers could produce some evidence that it would have obtained the work at the Hampton Inn and Sears Tower projects, Glaziers also contends that Iron Workers cannot recover damages for any work Glaziers did past the July 3, 1997 termi-

nation of the contract. The court disagrees with this argument because Iron Worker's alleged post-termination damages could be solely attributable to Glazier's pre-termination conduct.

Workers' early requests to resolve the disputes and continued to pursue these projects long before the work actually began. Had Glaziers immediately honored its contractual obligations rather than just shrugging its shoulders and accepting the assignments months later, this entire lawsuit may have been avoided. This conduct would have both complied with the contract and avoided any conflict with federal law. Because this course of action was clearly available to Glaziers, enforcement of the contract would not have forced Glaziers to violate public policy.

### III. *Glaziers' Motion for Summary Judgment on its Counterclaim*

Glaziers also argues that the court should grant it a summary judgment on its counterclaim which seeks to vacate the JCB's awards concerning the Hampton Inn and Sears Tower projects. The court denies this request without prejudice. Iron Workers has stated several times that this lawsuit does not seek to enforce the JCB's awards. Thus, at this juncture, there is no apparent reason to vacate those JCB rulings because Iron Workers seems to have waived its right to enforce any part of the JCB's decision. If, however, Iron Workers does attempt to enforce those awards, the court will consider the issue when the parties truly dispute the matter. Accordingly, the court denies Glaziers' motion for summary judgment on its counterclaim without prejudice.

### *Conclusion*

The court (1) denies Iron Workers' motion for summary judgment [doc. 23–1]; (2) grants in part and denies in part Glaziers' cross-motion for summary judgment [doc. 17–1]; and (3) denies Glaziers' motion for summary judgment on its counterclaim [doc. 17–2] without prejudice. Quite simply, there are genuine issues of material fact which preclude judgment as a matter of law in either party's favor on the breach of contract claim. However, it appears that even if Glaziers did breach the contract, Iron Workers will not be able to prove the lost income damages that it real-ly seeks in this action. Additionally, Iron Workers is barred from pursuing either punitive damages or attorneys' fees. Thus, because this case seems to lack potential for a substantial damages award, the court orders the parties to attempt to settle this matter before the next court date.